# DEPUTRON *v.* YOUNG.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF NEBRASKA.

No. 1151. Submitted January 6, 1890. — Decided March 10, 1890.

An averment of diverse citizenship by the plaintiff, necessa᷍ to confer a
jurisdiction, not being controverted by the defendant, m ʹ e taken as
true under the practice in the courts of Nebraska.

When the jurisdictional allegations of the plaintiff are not traversed by the
defendant, no question involving the capacity of the parties to litigate
in the federal courts can be raised before the jury, or treated as within
the issues they are empanelled to determine.

The objection, under section 5, of the act of March 3, 1875, c. 137, 18 Stat.
472, that parties to a suit have been improperly or collusively made or
joined for the purpose of creating a case cognizable under the act,
should be taken at the first opportunity; and delay in its presentation
will be considered in examining into the grounds upon which it is
alleged to rest.

A suit cannot properly be dismissed by a Circuit Court, as not involving a
controversy within the jurisdiction of the court, unless the facts, when
made to appear on the record, create a legal certainty of that conclusion.

In Nebraska a tax deed, not executed by the county treasurer under his
seal of office, is void.

In Nebraska a tax deed, though void on its face, is sufficient color of title
to support an adverse possession to the property therein described.

The adverse possession which bars a recovery in an action of ejectment
must be continuous, uninterrupted, open, notorious, actual, exclusive
and adverse.

Where the rightful owner of real estate is in the actual occupancy of a part
of his tract, he is in the constructive and legal possession and seisin of
the whole, unless he is disseised by actual occupation and dispossession;
and where the possession is mixed, the legal seisin is according to the
legal title.

A power from an owner of real estate authorizing the donee to make and
execute deeds to convey the real estate to purchasers, as the same may
be sold to such purchasers in tracts by a third party who acts under a
contract with the donor of the power, is a naked power to convey as
sales may be made, and a deed made by the donee to a person who was
not such a purchaser is a fraud upon the power.

In the case of a naked power not coupled with an interest, every prerequisite
to the exercise of that power should precede it.

In Nebraska the title of a purchaser at an executive sale depends not alone

upon his bid or payment of the purchase money, but upon the confirmation of the sale by the court.

One purchasing at an execution sale in Nebraska submits himself to the jurisdiction of the court as to matters affecting that sale; and as the court has power during the term to vacate or modify its own orders or to rescind a decree affirming the sale, he is concluded by the result of the proceedings to confirm or annul it.

THIS was an action of ejectment brought in the Circuit Court of the United States for the District of Nebraska, June 14, 1884, by Rowena Young, a citizen of Ohio, against John C. Deputron, a citizen of Nebraska, to recover certain premises in the petition named. The defendant answered, denying plaintiff's ownership and right to possession; and setting up title under a tax deed and purchase in good faith and without notice for $10,000 paid, being the full value, and ten years' adverse possession. To this answer a reply, specifically denying its averments, was filed by the plaintiff. At the November term, 1885, of said court, a trial was had, which resulted in a verdict for the defendant and judgment thereon, which was set aside on motion of plaintiff, and a new trial awarded. In March, 1886, the cause was tried a second time, and a special verdict of forty-one findings rendered by the jury as set forth in the margin.[1]

---

[1] 1st. That Jane Y. Irwin obtained title to said lands by patent from the United States December 15, 1862, and on the 9th of August, 1867, conveyed the same to William P. Young, who, on the 5th of February, 1874, reconveyed the same to Jane Y. Irwin, who, on the 11th day of June, 1884, conveyed said lands to the plaintiff, Rowena Young.

2d. On the 31st of March, 1874, Jane Y. Irwin and husband entered into a contract with N. S. Scott, Samuel Boyd and Milton La Master for the selling and subdivision of said lands.

3d. And said Scott, Boyd and La Master soon after entered upon said lands under said contract, and staked out the block corners and street intersections, being engaged in the survey on the lands in controversy and other lands for a period of about two months, finishing their survey about the last of May, 1874.

4th. On the 12th of August, 1875, Jane Y. Irwin and her husband executed a power of attorney to William T. Donavan to enable him to make conveyances to purchasers when sales were made by Scott, Boyd and La Master, and to facilitate their operations under their contract of March 31st, 1874.

The defendant excepted to the tenth, seventeenth and nineteenth findings, and moved to set aside each of the same, and

---

5th. We find that there was no assessment of the land in controversy for taxes in the year 1867, nor was the same borne upon the tax-list of that year.

6th. We find the tax deed of June 12, 1871, executed by John Cadman, county treasurer, was not sealed by the county treasurer with his official seal, nor did the county treasurer then have an official seal.

7th. We find that the county treasurer's deed executed by R. A. Bain, dated September 15, 1871, was not sealed by the county treasurer, nor did the county treasurer then have an official seal.

8th. We find the forty acres of land sold by the sheriff to E. J. Curson and conveyed by deed October 10, 1877, was at that time of the value of $20,000.

9th. That the confirmation of sale was set aside by the District Court of Lancaster County, in which it had been made November 3, 1877, before E. J. Curson had made any conveyance to any one, and was never afterwards confirmed.

10th. The jury find that Nelson C. Brock and his grantees had mixed possession of the west half of the southwest quarter of section 24, township 10, range 6, in Lancaster County, Nebraska, for ten years prior to the commencement of this suit, but the jury find that parties claiming under defendant's grantors held portions of said property and parties holding under plaintiff's grantors held portions of said property, so that said possession was in controversy and disputed and mixed down to the year 1877.

11th. That up to the year 1876, the said defendants and their grantors had mixed possession of the land in dispute, to wit, the northeast quarter of the southwest quarter of section 24, township 10, range 6, but said land was open, vacant and unoccupied, except by the city pest-house, and was used as a common.

12th. The jury also find that parties held mixed possession of portions of the west half of the southwest quarter of section 24, township 10, range 6, during the years 1874 and 1875, who did not attorn to or acknowledge possession in either the plaintiff or the defendants or any one under or by whom they claim.

13th. The jury find that the conveyance from Jane Y. Irwin and John Irwin by William T. Donavan, attorney-in-fact, to J. P. Lantz was a fraud upon the power held by said Donavan, and was given by Donavan and taken by Lantz with the intention of defrauding Jane Y. Irwin, and that Samuel W. Little had full knowledge of such facts, and procured such conveyance to be made with such knowledge and design.

14th. That the said deed by Donavan to Lantz and the deed of same by Lantz to Little were executed at the same time and were parts of one transaction, and that the northeast quarter of the southwest quarter of section

for a judgment for the defendant and against the plaintiff upon the verdict as thus amended; and the plaintiff filed his

24, township 10, range 6, was on the 25th day of October, 1879, worth $30,000, and that the balance of the land then by Donavan conveyed would exceed $ '0,000 in value at that time.

15th. That during the years 1874, 1875 and 1876, parties holding under the grantors of plaintiff held portions of the west half of the southwest quarter of section 24, township 10, range 6.

16th. We find that all the defendants had full knowledge of the revocation of the power of attorney aforesaid upon the record by Jane Y. Irwin, and of the facts therein stated prior to any purchase made by them or either of them:

17th. That one N. C. Brock, through whom the defendant traces one chain of his title on the 12th day of June, 1871, received from the county treasurer of Lancaster County, Nebraska, a tax deed of that date of the north half of and 20 acres off the west side of the southwest quarter of the southwest quarter of section 24, township 10, range 6 east, in Lancaster County, Nebraska, the premises in controversy being in northeast quarter of the southwest quarter aforesaid, which tax deed purported to be issued for the taxes assessed against the above-described parcels of land, respectively, for the year 1867, which tax deed was on the 13th day of June, 1871, recorded in the county clerk's office of Lancaster County, Nebraska.

18th. That on the 15th day of December, 1871, the county treasurer of Lancaster County, Nebraska, delivered to said Nelson C. Brock a second tax deed of that date covering the northeast quarter of the southwest quarter of section 24, township 10, range 6 east, in Lancaster County, Nebraska, including the property in dispute, which deed was issued for the tax of the year 1868, and which tax deed was on the 18th day of December, 1871, recorded in the county clerk's office of Lancaster County, Nebraska.

19th. That on the 18th day of December, 1871, said Nelson C. Brock made, executed and delivered to one Charles T. Boggs a lease in writing of that date of the north half of and the southwest quarter of the southwest quarter of section 24, township 10, range 6 east, in Lancaster County, Nebraska, for the term of two years from that date, which lease contained a leave or license to the lessee to remove all buildings placed upon said premises by him on or before the termination of said lease, which said lease was recorded in the county clerk's office of Lancaster County, Nebraska, on the 2d day of January, 1872.

20th. That on the 18th day of December, 1873, the said Nelson C. Brock made, executed and delivered to said Charles T. Boggs a second lease in writing of that date of the north half and the southwest quarter of the southwest quarter of section 24, township 10, range 6 east, in Lancaster County, Nebraska, for the term of two years from that date, which said lease contained a similar provision permitting the lessee to remove all buildings

motion for judgment on the verdict according to the prayer of the petition.  On the 10th day of May, 1886, these motions

---

and improvements by him erected or permitted to be erected on said premises off from the same at any time before the expiration of the said term therein granted, which lease was on the 5th day of January, 1874, recorded in the county clerk's office of Lancaster County, Nebraska.

21st. That in the month of December, 1871, the said Charles T. Boggs, claiming title under the said lease first aforesaid, entered into the mixed possession of the said premises by assuming control and ownership over the same, and by collecting rents from squatters and persons then located upon said premises, and subleased other portions of said premises, and continued to exercise mixed possession of said premises down to the time he yielded his mixed possession of the same to Samuel W. Little, and that he paid the rent to N. C. Brock for the said premises during the terms of the two leases above mentioned.

22d. That at the expiration of his term under said leases he yielded his mixed possession of the said premises to Samuel W. Little.

23d. That on the 18th day of May, 1874, said Nelson C. Brock and his wife, by their deed of quit-claim, conveyed all the said premises, the north half of the southwest quarter and the southwest quarter of the southwest quarter of section 24, township 10, range 6 east, to Samuel W. Little, which deed was duly recorded in the county clerk's office of Lancaster County, Nebraska, on the 26th day of May, 1874.

24th. That in or about the month of May, 1873, Charles T. Boggs subleased the north half of the southwest quarter of section 24, township 10, range 6 east, to one D. A. Gilbert, who, on or about that date, entered upon the mixed possession of the same and erected a ranch for cows, or milk ranch, on the northwest quarter of said quarter section, all the said north half of said southwest quarter being at the time he entered therein wholly vacant and unoccupied lands, and that he continued under said lease in the mixed possession and occupation of the same until in or about the year 1878, when he moved off his cattle ranch and surrendered his mixed possession of the same at the instance of S. W. Little, having during that period attorned and paid rent to Charles T. Boggs.

25th. That in the year 1876 Samuel W. Little began breaking up and actually improving the northeast quarter of said quarter section and erected windmills and placed other valuable improvements thereon, planted trees and shrubbery and set out hedges and other fences, and thence, until he delivered his mixed possession of the said property to his several grantees, had the mixed possession of the said premises, said northeast quarter of the southwest quarter of section 24, township 10, range 6 east.

26th. That on the 19th day of May, 1877, in the District Court of Lancaster County, in the State of Nebraska at the April term of the said court, in a certain action therein pending, wherein Milo H. Sessions was plaintiff and John Irwin and Jane Y. Irwin were defendants, a judgment was ob-

coming on to be heard, were submitted to the court on briefs to be filed within sixty days, and on the 24th day of June,

---

tained in the said action in favor of the said M. H. Sessions and against said John Irwin and Jane Y. Irwin by the consideration of said court, wherein it was considered by said court that the said plaintiff therein should recover from and against the said defendants, John Irwin and Jane Y. Irwin, the principal sum of $350, besides costs therein, taxed at the sum of $41.38, and for which said sums execution was awarded out of the said court; that thereafter execution was issued upon said judgment against the said John Irwin and Jane Y. Irwin, and the same coming to the hands of the sheriff of the said county, for want of goods and chattels whereon to levy the said writ, he seized and caused to be appraised, advertised and sold as the property of the said Jane Y. Irwin the northeast quarter of the southwest quarter of section 24, township 10, range 6, to one E. J. Curson for the sum of $30; that thereafter he made due return of his said sale unto the said District Court; and afterwards, on the 2d day of October, 1877, the following proceedings were had in the said court, to wit: " *M. H. Sessions against John Irwin and Jane Y. Irwin.* This case comes on upon motion of plaintiff for confirmation of sale heretofore had in this case, and it is hereby ordered by the court that cause be shown by Tuesday next, October 9th, why sale should not be confirmed."

That afterwards, on the 10th day of October, 1877, that being the 9th day of the October, 1877, term of said court, the following proceedings were had in said action therein: " *Milo H. Sessions v. John Irwin and Jane Y. Irwin.* This case comes on upon the motion of plaintiff for confirmation of sale heretofore had under former order of this court, and the court, upon a careful examination of the proceedings thereof, finds that the same have been had in all respects in conformity to law and the orders of this court. It is ordered that the said proceedings and sale be, and they are hereby, approved and confirmed; and it is further ordered by the court that the said sheriff convey to the purchaser by deed in fee simple the lands and tenements so sold." That afterwards and on the 10th day of October, 1877, pursuant to the foregoing proceedings, Sam. McClay, sheriff of said county, made, executed and delivered to said E. J. Curson, purchaser, a sheriff's deed of conveyance of the said premises, the northeast quarter of the southwest quarter of section 24, township 10, range 6 east, in Lancaster County, Nebraska; which deed was by the said E. J. Curson filed and recorded in the county clerk's office of Lancaster County, Nebraska, on the 10th day of October, 1877, at 5 o'clock, P.M.

27th. That on the 9th day of November, 1877, said Elijah J. Curson and Anna M. Curson, his wife, by deed of general warranty and for the consideration of the sum of $30, expressed to be in hand paid, granted, bargained, sold and conveyed the said premises, the northeast quarter of the southwest quarter of section 24, in township 10, range 6 east, to Samuel W. Little; which deed of conveyance was, on the 26th day of November, 1877,

1886, the court entered an order, by agreement of the parties, that the time to settle and sign a bill of exceptions be, and the

---

filed and recorded in the county clerk's office of Lancaster County, Nebraska.

28th. On the 12th of August, 1875, Jane Y. Irwin and her husband executed a power of attorney to William T. Donavan to enable him to make conveyances to purchasers when sales were made by Scott, Boyd and La Master, and to facilitate their operations under their contract of March 31st, 1874.

29th. That on the 25th day of October, 1879, the said Jane Y. Irwin and John Irwin, by W. T. Donavan, their attorney-in-fact, for the purported consideration, as expressed upon the face of said deed, of $1000, made, executed and delivered to one John P. Lantz their warranty deed conveying the northeast quarter of the southwest quarter of section 24, township 10, range 6 east, and all that portion of the west half of the said southwest quarter of section 24, township 10, range 6 east, lying north of the centre line of R Street, in the city of Lincoln, extended east through said lands; and also the following-described parcels of land, situated in the southwest quarter of said southwest quarter of section 24, township 10, range 6, aforesaid: Commencing at the southwest corner of said section 24, thence running east 520 feet; thence north 460 feet; thence west 520 feet; thence south 460 feet to the place of beginning; and also commencing at a point 460 feet east of the southeast corner of block No. 38, in the city of Lincoln, and 470 feet north of the south line of O Street, in said city of Lincoln; thence running east 760 feet; thence north 400 feet; thence west 760 feet; thence south 400 feet, to the place of beginning; which said deed was recorded in the county clerk's office of Lancaster County, Nebraska, on the 25th day of October, 1879, at 4 o'clock and 25 minutes P.M.

30th. That on the 25th day of October, 1879, said John P. Lantz and Hannah Lantz, his wife, by their deed of general warranty and for the consideration of $1000, as expressed in said deed, paid by Samuel W. Little to said John P. Lantz, conveyed the property in the last finding above described to the said Samuel W. Little; which deed was, on the 25th day of October, 1879, at 4 o'clock and 30 minutes P.M., recorded in the county clerk's office of Lancaster County, Nebraska.

31st. That neither Jane Y. Irwin nor John Irwin, nor any one for them, ever paid any taxes on any portion of the north half and the southwest quarter of the southwest quarter of section 24, township 10, range 6 east.

32d. That Nelson C. Brock and Samuel W. Little and their respective grantees of any property in dispute herein have paid all taxes assessed against the said property since the entry thereof to the year 1884, under claim of title to said premises.

33d. That on the 9th day of August, 1867, John Irwin and Jane Y. Irwin, by their deed of general warranty, conveyed to one William P. Young the north half of the southwest quarter and the southwest quarter of the southwest quarter of section 24, township 10, range 6 east, for the purported

same was thereby, extended to the second Monday in November following.    The record contains no such bill of exceptions.

---

consideration expressed on the face of the said deed of $490: which said deed was filed and recorded in the county clerk's office of Lancaster County, Nebraska, on the 10th day of August, 1867.

34th. That on the 9th day of January, 1875, said Samuel W. Little, by a deed of quit-claim, pursuant to an arrangement made between Jane Y. Irwin and one George Smith and said Samuel W. Little, made, executed and delivered, for the consideration of $100, a part of the southwest quarter of the southwest quarter of section 24, township 10, range 6 east; that said S. W. Little had consented to the entry of said George Smith upon the said parcel of land under the contract for the purchase of the same from Messrs. Scott, Boyd and La Master.

35th. That in the year 1873 one Hickman entered upon the northeast quarter of the southwest quarter of section 24, township 10, range 6 east, under a lease from Charles T. Boggs, and erected thereon stables for a milk ranch and paid rent thereon for said premises at the rate of $12 per annum, and continued to occupy the said premises for such purposes and for feeding and herding his stock thereon for a period of about two years.

36th. That from May 31, 1874, continuously down to the time of the commencement of this suit, June 14, 1884, Charles T. Boggs and Samuel W. Little and his and their lessees and grantees, under claim of title thereto, held mixed possession of all of the north half of the southwest quarter of section 24, township 10, range 6 east, and that no other person occupied the same or entered thereon under claim of title to any part thereof.

37th. That on the 25th day of September, 1883, Samuel W. Little and Mary D. Little, by their deed of general warranty and for the consideration of the sum of $10,500, sold and conveyed to the defendant, John C. Deputron, all that part of the northeast quarter of the southwest quarter of section 24, township 10, range 6 east, described as follows, and being the premises in dispute: Beginning at a point in the centre of R Street, in said city, 150 feet east of the east line of 17th Street; thence east along the centre of R Street 600 feet to the centre of 19th Street; thence north, at right angles with R Street, 1400 feet; thence west, parallel with R Street, 750 feet, to the east line of 17th Street extended north through R Street; thence south along said east line of 17th Street 790 feet; thence east, parallel with R Street, 94 feet; thence south, parallel with 17th Street, 247 feet; thence east, parallel with R Street, 38 feet; thence south, parallel with 17th Street, 163 feet; thence east along Leighton's north line 18 feet; thence south along Leighton's line 200 feet to the place of beginning, containing 22.15 acres of land; also part of the said northeast quarter of the southwest quarter of section 24, township 10, range 6 east, described as follows: For a starting point begin at a point 400 feet east of Grand Avenue and 200 feet north of R Street, at C. M. Leighton's northwest corner, running thence north 410 feet; thence east 94 feet; thence south 247 feet; thence east

On the 9th day of November, 1887, Deputron filed his petition, alleging that Rowena Young was not the real party in interest, and that the title of the property in controversy was collusively and fraudulently transferred to her for the sole purpose of vesting apparent jurisdiction in the federal court; that the case did not really and substantially involve a dispute or controversy properly within its jurisdiction; and that Rowena Young had been improperly and collusively made a plaintiff for the purpose of creating a case cognizable under the laws of the United States; and praying that the cause be dismissed; to which the plaintiff answered, denying any fraud and collusion, and averring that she was the real party interested. On the 16th day of November, 1888, the following order was entered:

"This cause coming on for hearing on the petition and application of the defendant to dismiss for want of jurisdiction, was tried by the court, Messrs. Hall and Webster appearing for the plaintiff, and Messrs. Lamb, Ricketts, and Wilson and Harwood, Ames and Kelly for the defendant; whereupon, after hearing the evidence and argument of counsel, and being fully advised in the premises, it is now, on this day,

38 feet; thence south 163 feet; thence west along Leighton's north line to the place of beginning, the north and south limits to be parallel with Grand Avenue and the east and west limits to be parallel with R Street; which said deed was recorded on the 6th day of September, 1883, in the county clerk's office of Lancaster County, Nebraska.

38th. That said Samuel W. Little delivered to the said John C. Deputron the mixed possession of the said premises at the date of the execution of the said deed, and that the said John C. Deputron thence and hitherto has held the mixed possession of the same.

39th. That the value of the said premises at the present time is the sum of forty thousand dollars.

40th. We find that John C. Deputron, defendant, is a brother-in-law of S. W. Little, his grantor, and that there is no proof of any consideration paid by Deputron to Little for such conveyance.

41st. That the value of the land claimed by John C. Deputron, defendant, being 22.15 acres was worth (40,000) forty thousand dollars.

January 29, 1875, S. W. Little was holding said premises as purchaser at tax sale under certificate of purchase May 26, 1874, for tax of 1872.

If the court is of the opinion that on these facts the plaintiff is entitled to possession of the property in dispute, then we find for the plaintiff.

ordered and adjudged by the court that said petition and application be, and the same are hereby, denied; to which ruling and order of the court, said defendant, by his attorneys, then and there duly excepted."

An opinion on the merits was given by the circuit judge, December 17, 1888, 37 Fed. Rep. 46, and, thereupon, the motion of the defendant for judgment was overruled, the motion of the plaintiff for judgment sustained, and judgment entered that the plaintiff recover from the defendant the real property described in the petition and the costs of the action. A bill of exceptions containing the petitions, answers and proceedings, and evidence adduced upon the question of jurisdiction, was signed and filed in due time. The pending writ of error was then sued out from this court.

*Mr. Walter J. Lamb, Mr. Arnott C. Ricketts* and *Mr. Henry H. Wilson* for plaintiff in error.

*Mr. John F. Dillon, Mr. Samuel Shellabarger, Mr. R. S. Hall* and *Mr. Joseph R. Webster* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is contended that the Circuit Court erred in entering judgment on the special verdict because the citizenship of the parties was not found by the jury. But that fact stood admitted on the record. The plaintiff averred in her petition that she was "a citizen and resident of the State of Ohio," and that the defendant was "a citizen and resident of the State of Nebraska." The answer set up three defences: (1) An affirmative claim of title under a tax deed; (2) Ten years' adverse possession; (3) "And this defendant, further answering, denies that the said plaintiff is the owner of the premises described in her petition; and this defendant also denies that the plaintiff is entitled to the possession of the said premises, and prays to be hence dismissed with his costs, to be taxed." The averment of diverse citizenship was not controverted by the answer,

and as the petition would have been insufficient without that allegation, the averment must be taken as true under the practice in the courts of record in Nebraska. Neb. Code Civ. Proc. §§ 134, 135; Comp. Stat. 1885, p. 645.

Clearly, where the jurisdictional allegation is not traversed, no question involving the capacity of the parties in the cause to litigate in the Circuit Court can be raised before the jury, *Railroad Co.* v. *Quigley*, 21 How. 202, 214; or treated as within the issues they might be impanelled to determine. The Circuit Court properly proceeded to judgment, although the special verdict contained no finding upon this point.

After the case had been twice tried on its merits, and stood on the special verdict upon motions by the parties for judgment in their favor respectively, the defendant assailed the jurisdiction of the court by petition, upon the ground that the title had been placed in the plaintiff collusively and with the view of enabling suit to be brought in the United States Court, when in fact the plaintiff did not own the property and had accepted the title only for the collusive purpose aforesaid. Prior to the passage of the act of 1875, such a question could only be raised by a plea in abatement in the nature of a plea to the jurisdiction; but the fifth section of that act provided that if " it shall appear to the satisfaction of said Circuit Court at any time after such suit has been brought that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit ; but its order dismissing the cause shall be reviewable by the Supreme Court on writ of error or appeal, as the case may be." 18 Stat. 472. The application here was made more than a year and a half after the second trial, and although the petitioner avers that he " did not have knowledge of the above facts before the trial of this cause," we remark in passing that such an objection ought to be raised at the first opportunity, and delay in its presentation should be consid-

ered in examining into the grounds upon which it is alleged to rest.

The issue of fact raised upon this petition was tried by the Circuit Court without a jury, and the application denied. No question of law was reserved by the defendant during the hearing, but he entered an exception to the final order, and now asks us to hold that it was the duty of the Circuit Court to dismiss the case because collusively brought. We do not care to enter upon a discussion as to how far in an action at law, where there are no special findings upon an issue of fact such as this, a party has the right to demand a review of the final order of the Circuit Court on the merits, as, upon the evidence in this record, we are content with the conclusion arrived at. In *Barry* v. *Edmunds*, 116 U. S. 550, it was held that a suit cannot properly be dismissed by a Circuit Court of the United States, as not involving a controversy within the jurisdiction of the court, unless the facts when made to appear on the record create a legal certainty of that conclusion. "Nothing less than this," said Mr. Justice Matthews, "is meant by the statute when it provides that the failure of its jurisdiction, on this account, 'shall appear to the satisfaction of said Circuit Court.'"

The question was whether the conveyance by Jane Y. Irwin to Rowena Young was colorable merely. The plaintiff testified positively that she was the real owner of the land, and that it was conveyed to her by her sister, Mrs. Irwin, partly in consideration of what Mrs. Irwin owed her, and partly because she herself had a share in it; that "the land was entered with money coming out of my father's estate belonging in part to me, being the joint fund of Jane and myself." And her testimony is corroborated by that of her brother, William P. Young.

We have carefully examined the evidence and especially the matters urged as constituting badges of colorable transfer, but do not find any substantial ground for overthrowing the deed, or questioning the passing of the title. Such conflict as exists has been determined by the Circuit Court, and it would subserve no useful purpose to restate the circumstances

in detail, as we think the facts fell far short of establishing petitioner's contention.

Upon the rendition of the special verdict the defendant moved to set aside the 10th, 17th and 19th findings as not supported by the evidence, and for judgment upon the verdict as so amended, but the court overruled the motion, and entered judgment for the plaintiff upon the special verdict as returned. We cannot review the action of the court in reference to the findings objected to, and, no exceptions having been saved, are restricted to the question whether there was error in giving judgment for the plaintiff upon the facts as found.

From the first finding it appears that Jane Y. Irwin "obtained title to said lands by patent from the United States December 15, 1862, and on the 9th of August, 1867, conveyed the same to William P. Young, who, on the 5th of February, 1874, reconveyed the same to Jane Y. Irwin, who, on the 11th day of June, 1884, conveyed said lands to the plaintiff, Rowena Young." This made out the title of defendant in error, and to prevent her recovery the plaintiff in error was obliged to sustain one or more of his affirmative defences, in respect to which he had the burden of proof.

These defences were: Claim under two tax deeds, coupled with ten years' adverse possession; conveyance by Jane Y. Irwin, by William T. Donavan as her attorney-in-fact; sheriff's deed on execution sale to Curson, deed of Curson to Little, and of Little to plaintiff in error.

As to the tax deeds, it was found that one was issued upon a sale made for the taxes of a year when the land was not assessed for taxes, and that neither of them was "sealed by the county treasurer with his official seal, nor did the county treasurer then have an official seal." The Circuit Court held that under the decisions of the Supreme Court of Nebraska, these tax deeds were void for want of the seal, and cited many decisions of that court to that effect. In *Gue* v. *Jones*, 25 Nebraska, 634, 637, January term, 1889, the court say: "At the trial the defendant produced a tax deed covering the premises in question, issued to Smith by the treasurer of Douglas County, August 4, 1865, for the taxes of 1862. This deed

was objected to by the plaintiff on several grounds, among others, that it was not executed under the official seal of the treasurer. The act of 1861, under which the deed was executed, provides, at section 60, 'that such conveyance shall be executed by the county treasurer, under his hand and seal;' then follows the statutory form of such deed, concluding with the words of attestation, ' In testimony whereof the said . . . treasurer of said county has hereunto set his hand and seal, on the date and year aforesaid. [Seal.]' The statute has been substantially carried forward throughout all the changes of the revenue laws to the present day. Under its provisions it has been held by this court in cases too numerous for citation, of which several are cited by counsel for defendant in error, that *a tax deed not executed by the treasurer under his seal of office is void.* It will not be expected that this line of decision can be departed from now. The deed introduced in the case at bar, if legal and proper in all other respects, as to which we pass no opinion, is open to the fatal objection that it does not purport to have been executed by the county treasurer under his seal of office."

No title, therefore, was transmitted by these deeds; but a tax deed, though void upon its face, is sufficient color of title in Nebraska to support an adverse possession to the property therein described; *Gatling* v. *Lane*, 17 Nebraska, 77; while a tax certificate is not. *McKeighan* v. *Hopkins*, 14 Nebraska, 361, 364. The possession, however, which bars a recovery, must be continuous, uninterrupted, open, notorious, actual, exclusive and adverse. *Armstrong* v. *Morrill*, 14 Wall. 120, 145. From the findings it appears that Little was holding in January, 1875, which was within ten years prior to the commencement of this suit, under a tax certificate; that up to the year 1876 the possession of the land in dispute was "mixed," but it "was open, vacant and unoccupied except by the city pest-house, and was used as a common;" that some portions of the whole tract were in possession of squatters, some portions in possession of parties holding under Mrs. Irwin, and a part in the possession of the grantee in the tax deeds or under him; and the jury find the possession of the premises deliv-

ered to the defendant and held by him to have been only a mixed possession. Where the rightful owner is in the actual occupancy of a part of his tract, he is in the constructive and legal possession and seisin of the whole, unless he is .disseised by actual occupation and dispossession; and where the possession is mixed, the legal seisin is according to the legal title, so that in the case at bar there could be no constructive possession on the part of the defendant or his grantors, even if that might exist if he had had actual possession of a part, and no one had been in possession of the remainder. *Hunnicutt* v. *Peyton*, 102 U. S. 333, 368; *Barr* v. *Gratz*, 4 Wheat. 213, 223. Nothing is clearer upon the face of this record than that the jury refused to find the possession relied on by defendant to have been actual, undisputed, exclusive, open, notorious and adverse, but found, on the contrary, that the possession was mixed. The judgment cannot be reversed on the ground of error in this regard.

The plaintiff in error also asserted title under a conveyance by Donavan as her attorney-in-fact. The 2d, 3d, 4th, 13th, 14th, 16th, 28th, 29th, 30th, 37th and 40th findings present the facts on this branch of the case, and establish that on the 31st day of March, 1874, Jane Y. Irwin entered into a contract with Scott, Boyd and La Master for the subdivision and sale of this and other land, and that they entered upon, platted and surveyed it by the last of May, 1875 ; that, (4th and 28th,) "on the 12th of August, 1875, Jane Y. Irwin and her husband executed a power of attorney to William T. Donavan, to enable him to make conveyances to purchasers when sales were made by Scott, Boyd and La Master, and to facilitate their operations under their contract of March 31, 1874;" that on the 25th day of October, 1879, a deed was. executed by Donavan, as attorney-in-fact, for tracts which included that in dispute, to one Lantz, for "the purported consideration, as expressed upon the face of said deed, of $1000," and on the same .day Lantz, "for the consideration of $1000, as expressed in said deed, paid by Samuel W. Little to said John P. Lantz," conveyed the same to Little; that these deeds were parts of one transaction, and the entire

property conveyed was worth over $100,000; that the conveyance by Donavan to Lantz "was a fraud upon the power held by said Donavan, and was given by Donavan and taken by Lantz with the intention of defrauding Jane Y. Irwin, and that Samuel W. Little had full knowledge of such fact, and procured such conveyance to be made with such knowledge and design;" that the defendant had full knowledge of the revocation of the power of attorney aforesaid upon the record by Jane Y. Irwin and of the facts therein stated prior to any purchase by him, that Little and wife, for the recited consideration of $10,500, sold and conveyed to Deputron, who was a brother-in-law of Little, "and nat there is no proof of any consideration paid by Deputron to Little for such conveyance." It is not pretended that the deed to Lantz was made to carry out or effectuate any sale of the property which had been made by Scott, Boyd and La Master, and the findings show that it was made in fraud of the power of attorney and with the intention of defrauding Jane Y. Irwin. We cannot agree with the counsel for plaintiff in error that it is to be inferred that the power to Donavan was a power to convey generally and at discretion. We do not understand the language of the fourth and twenty-eighth findings, which are identical, as merely indicating the purpose for which the power of attorney was given, but regard it as expressing the limitations of the power. It was the scope of the power that the jury must have had in mind in stating that it was executed to enable Donavan to make conveyances to purchasers "when sales were made by Scott, Boyd and La Master, and to facilitate their operations under their contract of March 31st, 1874." We think it sufficiently clear that it was only a naked power to convey when a sale had been made. The deed by Donavan was a fraud upon the power, because it was in violation of the authority thereby vested. The rule is well settled that "in the case of a naked power, not coupled with an interest, the law requires that every prerequisite to the exercise of that power should precede it. The party who sets up a title must furnish the evidence necessary to support it. If the validity of a deed depends on an act *in pais*, the

party claiming under it is as much bound to prove the performance of the act as he would be bound to prove any matter of record on which the validity of the deed might depend." *Williams* v. *Peyton's Lessee*, 4 Wheat. 77; *Ransom* v. *Williams*, 2 Wall. 313, 319. It behooved the plaintiff in error to have the power made part of the findings, if the conclusion we have reached as to its contents was open to dispute, and not to have accepted the fourth and twenty-eighth findings without objection. In the language used in *Williams* v. *Peyton's Lessee*, the power was a link in his chain which was essential to its continuity, and which it was incumbent on him to preserve. The findings in reference to this power not only do not justify the contention of plaintiff in error, but are inconsistent with it, for the Donavan deed was not simply found fraudulent in fact, but "a fraud upon the power." This, coupled with the finding that the power was to enable Donavan to convey when sales were made by Scott, Boyd and La Master, shows that Donavan's act, when compared with the words of the power, was not warranted by the terms used. Nor under those findings is there any ground for the assumption that Deputron believed that Scott, Boyd and La Master had made sale of the property to Lantz or Little.

Even if the power had been general the conveyance was found fraudulent, and no estoppel arises in favor of plaintiff in error in the absence of findings that he paid value without notice.

It is impossible to conclude that the Circuit Court erred in putting aside this attempt to bolster up the title by the deed of Donavan.

In addition to the Donavan deed and the tax deeds, it is urged on behalf of the plaintiff in error that he made out title under a sale on execution. One Sessions on May 19, 1877, recovered a judgment in the District Court of Lancaster County, Nebraska, against Jane Y. Irwin, upon which execution was issued and levied on forty acres, of which the premises in controversy were a part, and sale made to one Curson for $30, which sale was confirmed October 10, 1877, and a

deed of the forty acres made by the sheriff and recorded on the same day, the land being worth at that time $20,000. The order confirming the sale was set aside by the court November 3, 1877, before Curson "had made any conveyance to any one, and was never afterwards confirmed." On the 9th of November, 1877, Curson conveyed this land for $30 to S. W. Little, which deed was recorded on the 26th day of November.

The opinion of the Circuit Court upon this point is as follows: "It is the settled law of Nebraska that the title of a purchaser at an execution sale depends not alone upon his bid or payment of the purchase money, but upon the confirmation of the sale; also that one purchasing at an execution sale submits himself to the jurisdiction of the court as to matters affecting that sale, and that a court has power during the term to vacate or modify its own orders or to rescind decrees. *Phillips* v. *Dawley*, 1 Nebraska, 320; *Bank* v. *Green*, 10 Nebraska, 134; *Volland* v. *Wilcox*, 17 Nebraska, 50; *Gregory* v. *Tingley*, 18 Nebraska, 318, 322. It follows from these facts and decisions that the sale, though temporarily confirmed, was finally set aside, and that no rights of a third party accrued during the time that the sale was apparently confirmed. Hence this chain of title presented by defendants must fail." We are entirely satisfied that this expresses the law on the subject in the State of Nebraska. In *State Bank* v. *Green*, 10 Nebraska, 130, 134, the Supreme Court of Nebraska says: "Under our law governing sales of real property on execution the title of the purchaser depends entirely upon the sale being finally confirmed by the court under whose process it was made, and until this is done the rights of the execution debtor are not certainly divested." The final order confirming is subject to review as the confirmation of a sale in equity is, *Parrat* v. *Neligh*, 7 Nebraska, 456, 459; and the purchaser submits to the jurisdiction of the court as to all matters connected with such sale or relating to him in the character of purchaser. This order of confirmation was vacated before there was any change in the relation of the parties, and the sheriff's deed fell with it. Counsel for plaintiff in

error refers to section 508 of the Civil Code, which reads as follows : "If any judgment or judgments, in satisfaction of which any lands or tenements are sold, shall at any time thereafter be reversed; such reversal shall not defeat or affect the title of the purchaser or purchasers; but, in such case, restitution shall be made by the judgment creditor, of the moneys for which such lands or tenements were sold, with lawful interest from the day of sale." Comp. Stat. 1885, p. 695. This section relates to the judgment, as to which the purchaser is not affected by irregularity or error, and to which he is not a party; but we are considering the order of confirmation, which may be reviewed on appeal; *Parrat* v. *Neligh*, *ubi sup.* ; though the merits of the original case are not open to reëxamination. *Bank of Lincoln* v. *Scofield*, 9 Nebraska, 499.

The cases cited by the circuit judge show that the purchaser can move for confirmation or to set the sale aside, and can appeal from the order thereon; that he may be compelled to perform his bid, and that he is concluded by the result of the proceedings to confirm or annul the same. And see *Faulett* v. *Peabody*, 3 Nebraska, 196, 197; *Shann* v. *Jones*, 4 C. E. Green (19 N. J. Eq.) 251; *Requa* v. *Rea*, 2 Paige, 339; *Barker* v. *Richardson*, 41 N. J. Eq. (14 Stewart) 656. That such is the rule in Nebraska is quite convincingly shown by the case of *Sessions* v. *Irwin*, 8 Nebraska, 5, which was an appeal by Curson from the order setting aside the confirmation and the sale under consideration here, which order was, however, affirmed. If Sessions, the judgment creditor, received $30 from Curson, respecting which there is no finding, he became Curson's debtor to that amount, and, as argued for defendant in error, Curson might have a right to be compensated out of the moneys collected upon the judgment, but the operation of the order setting aside the confirmation was to defeat any claim of title on the part of Curson or his grantee. This accords with the decisions and settled practice of the state courts in reference to sales under process issuing out of them.

Finally, it is said that the judgment embraces property not described in the petition. The description was " the west half of the northeast quarter of the southwest quarter of section twenty-four."

The jury found title thereto in defendant in error, and also by the 37th finding described what was stated to be "the premises in dispute" by metes and bounds, as conveyed to Deputron. The judgment, though using somewhat different language, conforms to the finding. There was no motion to set aside the verdict and for a new trial, nor can we discover that any suggestion of mistake in its terms was made below.

·,The governmental subdivision would be, if accurate, eighty rods long by forty rods wide, and the finding and judgment describe a tract fourteen hundred feet in length by seven hundred and fifty feet in width, less a parcel in the southwest corner, but excess in acreage frequently occurs in government surveys, and as the finding is that the description there given and followed in the judgment is the description of the premises in dispute, we perceive no ground for interference.

There being no error, the judgment is

*Affirmed.*