PRICE, FORBES & CO., Limited, v. MONTGOMERY.

No. 7302.

Circuit Court of Appeals, Seventh Circuit.
Oct. 31, 1940.

Rehearing Denied Dec. 16, 1940.

Silas H. Strawn and John D. Black, both of Chicago, Ill., for appellant.

L. Duncan Lloyd and Theodore C. Diller, both of Chicago, Ill., for plaintiff-appellee.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, Price, Forbes & Co. Ltd., a corporation, brought this action against the defendant to recover an amount claimed to be due it from defendant under a certain proposal signed by defendant and accepted by plaintiff. The defendant interposed affirmative defenses and a counterclaim in an original and two amended answers. On motion of plaintiff supported by affidavits, the District Court dismissed the counterclaim and entered a summary judgment for $16,947.22 for part of plaintiff's claim, retaining jurisdiction of the balance of the claim to be tried by a jury. From that judgment this appeal is prosecuted.

The complaint alleged that the defendant procured from plaintiff policies of insurance on the agreement that he would pay plaintiff all premiums accruing thereon; that plaintiff delivered such policies to defendant without receiving the premiums due; that a controversy arose as to the amount due and owing to plaintiff and the parties thereupon entered into negotiations with respect thereto, resulting on March 3, 1939 in a written agreement, by which the amount of such indebtedness was stated to be the sum of $26,167.04 as of January 16, 1939, subject to certain credits and deductions enumerated in the agreement which reduced the indebtedness to $19,059.98.

The complaint further alleged that in consideration of said indebtedness being so stated, plaintiff waived all claims for charges in excess of the amount stated and defendant waived all claims for credits except as were taken into account in computing the amount so stated and which were enumerated in said agreement, and the agreement provided *"Nothing herein contained is intended to defer or extend the*

*time for, or impose any conditions upon, the payment of such indebtedness"* * * * and "shall be considered as an account stated between us as of January 16, 1939, subject to adjustments and other terms and conditions herein provided."

The defendant answered that he signed the agreement with the distinct understanding that he would be given an opportunity to work out the payment of the amount agreed to as a compromise measure through the operation of his business, and to pay the same from the profits of his business; that no action would be taken which would interfere with or jeopardize his business and his consequent ability to make payments from the operations of his business; that the bringing of this suit is a violation of the terms of the agreement, and that by reason of such violation the defendant is not only not obligated to pay plaintiff any amount, but plaintiff is liable to pay defendant an amount sufficient to compensate him for the damages sustained by reason of the wrongful conduct of the plaintiff.

The defendant also filed a counterclaim that plaintiff pay to defendant all damages resulting from the matters stated in the answer and that in May 1937 a certain contract existing between plaintiff and defendant, from which defendant derived a great profit, was wrongfully and without notice required by said contract cancelled by the plaintiff, and that as a result defendant has been damaged in excess of any amount which plaintiff can claim under any existing arrangements from the defendant.

Upon motion duly made the answer was stricken and the counterclaim dismissed. Thereafter the defendant filed an amended answer and counterclaim in which he averred that the contract contained no stipulation as to time for the payment of the amount stated to be due plaintiff, and that the proper construction of the agreement, as the parties understood it at the time it was executed, was that the amount due should be paid by means of the continuing credits provided for in certain designated paragraphs of the agreement.

The court again struck those paragraphs of the answer which alleged an oral understanding as to the meaning of language above italicized, and dismissed the counterclaim.

Thereafter defendant filed a second amended answer and counterclaim. This answer alleged that defendant was not required to pay plaintiff any amount except in accordance with the terms of the agreement and that plaintiff was not entitled to recover any sum whatever. The counterclaim averred that the plaintiff, maliciously and with the intention of injuring the defendant's reputation and damaging his business, caused the Illinois Petroleum Marketers Association to write to his customers that the defendant was no longer in a position to act for his customers in the insurance business; and that these letters were sent maliciously for the purpose of damaging the defendant by causing him to lose premiums and commissions, as a result of which his business has lost large profits and his reputation has been injured and his business irreparably damaged, and that the amount of such damage exceeds any amount claimed to be due from defendant to plaintiff; and that upon these issues the defendant demands a jury trial.

Thereafter, upon plaintiff's motion, the court dismissed the counterclaim and entered a summary judgment for the plaintiff for $16,947.22, that being the difference between the sum claimed by plaintiff and the sum claimed by defendant by way of set-off as credits under the agreement, and directed defendant to file a bill of particulars with respect to certain remaining items set up in the defendant's answer.

■ At the outset a preliminary question arises which we must dispose of before we proceed to the merits. Appellant makes the point that it does not appear that the District Court had jurisdiction of the cause. Little need be said upon this question. While it is true that in his answer the defendant stated that he had no knowledge or information sufficient to form a belief as to plaintiff's incorporation and citizenship, nevertheless in the agreement involved in this case the defendant recognized the plaintiff to be an English corporation, and in the complaint plaintiff describes itself as an English corporation, duly organized and existing under and by virtue of the laws of the United Kingdom of Great Britain, a citizen and resident of England, and a non-resident of the State of Illinois. Under such a state of the record this was sufficient to give jurisdiction, as it affirmatively appeared plaintiff was a citizen of England. Hennessy v. Richardson Drug Co., 189 U.S. 25, 23 S.Ct. 532, 47 L.Ed. 697; Nicholas Lumber Co. v. Franson, 203 U.S. 278, 27 S.Ct. 102, 51 L.Ed. 181; Shaw v. Quincy Mining Co., 145 U.S. 444, 451, 12 S.Ct. 935, 36 L.Ed.

768; Shattuck v. North British & Mercantile Ins. Co., 8 Cir., 58 F. 609, 610; and Deputron v. Young, 134 U.S. 241, 10 S.Ct. 539, 33 L.Ed. 923.

We now pass to consider the merits. We learn that appellant contends that the agreement did not provide nor state any time within which the amount agreed to be due should be paid by the defendant; consequently the agreement contained only a part of the agreement and it was competent to show by parol evidence the balance, and he cites cases that such is the rule. We have examined those cases. They are not in point for the reason that the contracts in those cases were susceptible of more than one meaning or the meaning was obscure or ambiguous.

■ The contract having been reduced to writing, it affords the only evidence of its terms and conditions, and it cannot be varied by contemporaneous verbal agreements of the parties; under such circumstances we think the correct rule applicable was announced by Judge Evan A. Evans in International Trading Co. v. John Sexton & Co., 7 Cir., 24 F.2d 12, 14, thus: "It is elementary that, where a party seeks to deny the plain import of a writing which reveals no uncertainty in meaning even when viewed in connection with the circumstances of its making, the rule of substantive law, which declares that all prior extrinsic matters are merged in the writing, governs."

■ In our case the indebtedness is referred to as an existing obligation expressly acknowledged to exist "as of January 16, 1939." It was not a case of latent ambiguity. The acknowledgment of the debt was complete. Moreover, appellant agreed that nothing in the agreement was intended to defer or extend the time for, or impose any conditions upon, the payment of the indebtedness. In this regard we are of the opinion that Gorrell v. Home Life Insurance Co. of New York, 7 Cir., 63 F. 371 is pertinent. In that case the plaintiff sued upon a promissory note. In the body of the note appeared the following: "And I further agree to allow all renewal commissions accruing to my account on and after January 1st, 1892, to be retained by said company, to be applied to the liquidation of this obligation." There, as here, the contention was that the amount due on the note should be paid out of accruing commissions, and not otherwise. The court said page 377 of 63 F.: "The proof pro-

posed here was of an agreement inconsistent with the writing, which in itself is complete and unambiguous," and held that to permit the introduction of oral testimony would have been in plain violation of the familiar rule "which precludes the admission of parol evidence to contradict or substantially vary the legal import of a written agreement."

■ Finally appellant makes the point that the counterclaim was properly pleaded and it was error to dismiss it.

The letter attached to the counterclaim as an exhibit is as follows:

"Exhibit 5.

"(Letterhead of Illinois Petroleum Marketers Association, Springfield, Ill.)

"Miller Oil Co.

"Barrington, Ill.

"Gentlemen:

"The Equity Mutual Insurance Company, with whom your Illinois motor fuel tax bond is carried, advise us that it is their intention to effect a change in their Illinois agent.

"Under the Illinois insurance laws individuals and firms having surety bonding coverage through them must have proper notification of such agency change; hence, we ask that you acknowledge this notification to you by signing the enclosed self-addressed postal card and returning it to us.

"It is important that you give this matter your immediate attention so that the proper record can be filed with the State Department of Finance in connection with your motor fuel tax bond now on file with that Department.

"Thanking you for your prompt compliance with this request and assuring you of our desire to be of service to you at all times, we are

"Very truly yours,
"Illinois Petroleum Marketers Association,
"G. A. Primm,
"Secretary."

We are unable to see how or in what manner the defendant is connected with this letter. It will be noted that the letter does not assert that the Illinois Petroleum Marketers Association is the plaintiff's agent and no where in the counterclaim is it alleged that the statements in the letter are untrue.

It is our opinion that the District Court did not err in striking the answers and

counterclaim and in entering the summary judgment.

The judgment is affirmed.