## SHAW *v.* QUINCY MINING COMPANY.

### ORIGINAL.

No. 13.  Original.  Argued March 8, 1892. — Decided May 16, 1892.

Under the act of March 3, 1887, c. 373, § 1, as corrected by the act of August 13, 1888, c. 866, a corporation, incorporated in one State only, cannot be compelled to answer, in a Circuit Court of the United States held in another State, in which it has a usual place of business, to a civil suit, at law or in equity, brought by a citizen of a different State.

THIS was a petition for a writ of mandamus to the judges of the Circuit Court of the United States for the Southern District of New York to command them to take jurisdiction against the Quincy Mining Company upon a bill in equity, filed in that court on September 3, 1891, by the petitioner, described in the bill as a citizen of Massachusetts, in behalf of himself and other stockholders of the Quincy Mining Company, against "the Quincy Mining Company, a corporation duly organized under the laws of the State of Michigan, and having a usual place of business in the city, county and State of New York," and against certain individuals described in the bill as citizens of the State of New York. Upon that bill a subpoena was issued, directed to the Quincy Mining Company, and, as appeared by the marshal's return thereon, was

served upon it within the Southern District of New York by exhibiting to its secretary the original subpœna and leaving with him a copy. The Quincy Mining Company appeared specially, and moved for an order to set aside the service.

At the hearing of the motion, it appeared that the Quincy Mining Company was a corporation organized for the purpose of mining in the county of Houghton in the Upper Peninsula of the State of Michigan, under the statute of Michigan of May 11, 1877, c. 113, by section 30 of which "it shall be lawful for any company associating under this act to provide in the articles of association for having the business office of such company out of this State, and to hold any meeting of the stockholders or board of directors of such company at such office so provided for, but every such company having its business office out of this State shall have an office for the transaction of business within this State, to be also designated in such articles of association;" and that this company, in its articles of association, did provide as follows: "The business office of the company hereby constituted and formed shall be in the city, county and State of New York, and another business office is hereby established at the Quincy mine, in the county of Houghton and State of Michigan."

The order to set aside the service was granted by the court, upon the ground (as stated in its return to the rule to show cause why the writ of mandamus should not issue) "that said Quincy Mining Company is a corporation created and existing under the laws of the State of Michigan, and is an inhabitant of the Western District of Michigan, and not an inhabitant of the Southern District of New York."

*Mr. Michael M. Cardozo* for the petitioner.

*Mr. Don M. Dickinson* (with whom was *Mr. Alfred Russell* on the brief) opposing.

*Mr. Solicitor General*, by leave of court, filed a brief in support of the petition.

*Mr. John F. Dillon* and *Mr. J. Hubley Ashton*, by leave of court, filed a brief against it.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The single question in this case is whether under the act of March 3, 1887, c. 373, § 1, as corrected by the act of August 13, 1888, c. 866, (the material parts of which are copied in the margin,[1]) a corporation incorporated in one State of the Union, and having a usual place of business in another State in which it has not been incorporated, may be sued, in a Circuit Court of the United States held in the latter State, by a citizen of a different State.

This question, upon which there has been a diversity of opinion in the Circuit Courts, can be best determined by a review of the acts of Congress, and of the decisions of this court, regarding the original jurisdiction of the Circuit Courts of the United States over suits between citizens of different States.

In carrying out the provision of the Constitution which declares that the judicial power of the United States shall extend to controversies " between citizens of different States,"

---

[1] " The Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid, or a controversy between citizens of the same State claiming lands under grants of different States, or a controversy between citizens of a State and foreign States, citizens or subjects, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid." " But no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court; and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 25 Stat. 434.

Congress, by the Judiciary Act of September 24, 1789, c. 20, § 11, conferred jurisdiction on the Circuit Court of suits of a civil nature, at common law or in equity, "between a citizen of the State where the suit is brought and a citizen of another State," and provided that "no civil suit shall be brought" "against an inhabitant of the United States," "in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." 1 Stat. 78, 79.

The word "inhabitant," in that act, was apparently used, not in any larger meaning than "citizen," but to avoid the incongruity of speaking of a citizen of anything less than a State, when the intention was to cover not only a district which included a whole State, but also two districts in one State, like the districts of Maine and Massachusetts in the State of Massachusetts, and the districts of Virginia and Kentucky in the State of Virginia, established by § 2 of the same act. 1 Stat. 73. It was held by this court from the beginning that an averment that a party resided within the State or the district in which the suit was brought was not sufficient to support the jurisdiction, because in the common use of words a resident might not be a citizen, and therefore it was not stated expressly and beyond ambiguity that he was a citizen of the State, which was the fact on which the jurisdiction depended under the provisions of the Constitution and of the Judiciary Act. *Bingham* v. *Cabot*, 3 Dall. 382; *Turner* v. *Bank of North America*, 4 Dall. 8; *Abercrombie* v. *Dupuis*, 1 Cranch, 343; *Hodgson* v. *Bowerbank*, 5 Cranch, 303; *Brown* v. *Keene*, 8 Pet. 112, 115. The same rule has been maintained to the present day, and has been held to be unaffected by the Fourteenth Amendment of the Constitution, declaring that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." *Robertson* v. *Cease*, 97 U. S. 646; *Grace* v. *American Ins. Co.*, 109 U. S. 278; *Timmons* v. *Elyton Land Co.*, 139 U. S. 378; *Denny* v. *Pironi*, 141 U. S. 121.

By the act of May 4, 1858, c. 27, § 1, it was enacted that, in a State containing more than one district, actions not local

should " be brought in the district in which the defendant resides," or " if there be two or more defendants residing in different districts in the same State," then in either district 11 Stat. 272. The whole purport and effect of that act was not to enlarge, but to restrict and distribute jurisdiction. It applied only to a State containing two or more districts; and directed suits against citizens of such a State to be brought in that district thereof in which they or either of them resided. It did not subject defendants to any new liability to be sued out of the State of which they were citizens, but simply prescribed in which district of that State they might be sued.

These provisions of the acts of 1789 and 1858 were substantially reënacted in sections 739 and 740 of the Revised Statutes.

The act of March 3, 1875, c. 137, § 1, after giving the Circuit Courts jurisdiction of suits " in which there shall be a controversy between citizens of different States," and enlarging their jurisdiction in other respects, substantially reënacted the corresponding provision of the act of 1789, by providing that no civil suit should be brought " against any person " " in any other district than that whereof he is an inhabitant or in which he shall be found " at the time of service, with certain exceptions not affecting the matter now under consideration. 18 Stat. 470.

The act of 1887, both in its original form, and as corrected in 1888, reënacts the rule that no civil suit shall be brought against any person in any other district than that whereof he is an inhabitant, but omits the clause allowing a defendant to be sued in the district where he is found, and adds this clause: " But where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 24 Stat. 552 ; 25 Stat. 434. As has been adjudged by this court, the last clause is by way of proviso to the next preceding clause, which forbids any suit to be brought in any other district than that whereof the defendant is an inhabitant; and the effect is that " where the jurisdiction is founded upon any of the causes mentioned in this

section, except the citizenship of the parties, it must be brought in the district of which the defendant is an inhabitant.; but where the jurisdiction is founded solely upon the fact that the parties are citizens of different States, the suit may be brought in the district in which either the plaintiff or the defendant resides. *McCormick Co.* v. *Walthers,* 134 U. S. 41, 43. And the general object of this act, as appears upon its face, and as has been often declared by this court, is to contract, not to enlarge, the jurisdiction of the Circuit Courts of the United States. *Smith* v. *Lyon,* 133 U. S. 315, 320; *In re Pennsylvania Co.,* 137 U. S. 451, 454; *Fisk* v. *Henarie,* 142 U. S. 459, 467.

As to natural persons, therefore, it cannot be doubted that the effect of this act, read in the light of earlier acts upon the same subject, and of the judicial construction thereof, is that the phrase " district of the residence of " a person is equivalent to " district whereof he is an inhabitant," and cannot be construed as giving jurisdiction, by reason of citizenship, to a Circuit Court held in a State of which neither party is a citizen, but, on the contrary, restricts the jurisdiction to the district in which one of the parties resides within the State of which he is a citizen; and that this act, therefore, having taken away the alternative, permitted in the earlier acts, of suing a person in the district " in which he shall be found," requires any suit, the jurisdiction of which is founded only on its being between citizens of different States, to be brought in the State of which one is a citizen, and in the district therein of which he is an inhabitant and resident.

In the case of a corporation, the reasons are, to say the least, quite as strong for holding that it can sue and be sued only in the State and district in which it has been incorporated, or in the State of which the other party is a citizen.

In *Bank of Augusta* v. *Earle,* 13 Pet. 519, 588, Chief Justice Taney said: " It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law ; and where that law ceases to operate, and is no longer obligatory, the corporation can have no exist-

ence. It must dwell in the place of its creation, and cannot migrate to another sovereignty. But although it must live and have its being in that State only, yet it does not by any means follow that its existence there will not be recognized in other places; and its residence in one State creates no insuperable objection to its power of contracting in another."

This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicil, the habitat, the residence, the citizenship of the corporation can only be in the State by which it was created, although it may do business in other States whose laws permit it.

In *Lafayette Ins. Co.* v. *French*, 18 How. 404, in which an Indiana corporation was sued in Indiana upon a judgment recovered in an action against it in a state court of Ohio upon a contract made in that State, this court, speaking by Mr. Justice Curtis, and referring to *Bank of Augusta* v. *Earle*, said: "This corporation, existing only by virtue of a law of Indiana, cannot be deemed to pass personally beyond the limits of that State;" and held that it was bound by the judgment, because it had been allowed by the State of Ohio to make contracts in that State only upon the reasonable and lawful condition of its agent, residing and making contracts there, being deemed its agent to receive service of process in suits upon such contracts; and therefore that such a judgment recovered after such a notice was "as valid as if the corporation had had its habitat within the State." 18 How. 407, 408.

"A corporation," said Chief Justice Waite, "created by and organized under the laws of a particular State, and having its principal office there, is, under the Constitution and laws, for the purpose of suing and being sued, a citizen of that State." "By doing business away from their legal residence, they do not change their citizenship, but simply extend the field of their operations. They reside at home, but do business abroad." *Railroad Co.* v. *Koontz*, 104 U. S. 5, 11, 12. See also *Paul* v. *Virginia*, 8 Wall. 168, 181; *Railroad Co.* v. *Harris*, 12 Wall. 65, 81; *St. Clair* v. *Cox*, 106 U. S. 350, 354, 356; *Canada Southern Railway* v. *Gebhard*, 109 U. S. 527, 537.

The same doctrine has been constantly maintained by this court in applying to corporations the judiciary acts conferring on the Circuit Courts of the United States jurisdiction of suits between citizens of different States.

Those acts have never named corporations; and for half a century after the passage of the first act corporations were allowed to sue and be sued in the Circuit Courts, only when all the members of the corporation were, and were alleged to be, citizens of the State which created the corporation. *Bank of United States* v. *Deveaux*, 5 Cranch, 61; *Hope Ins. Co.* v. *Boardman*, 5 Cranch, 57; *Sullivan* v. *Fulton Steamboat Co.*, 6 Wheat. 450; *Breithaupt* v. *Bank of Georgia*, 1 Pet. 238; *Commercial Bank* v. *Slocomb*, 14 Pet. 60.

But in *Louisville &c. Railroad* v. *Letson*, in 1844, it was adjudged, upon great consideration, that it is sufficient to sustain the jurisdiction that the corporation is created by a different State from that of which the opposite party is a citizen; and Mr. Justice Wayne stated that the court rested its judgment upon the ground "that a corporation created by and doing business in a particular State is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same State, for the purposes of its incorporation, capable of being treated as a citizen of that State, as much as a natural person," and "is substantially, within the meaning of the law, a citizen of the State which created it, and where its business is done, for all the purposes of suing and being sued." 2 How. 497, 558. And it has ever since been treated as settled that, for these purposes, the members of a corporate body must be conclusively presumed to be citizens of the State in which the corporation is domiciled. *Marshall* v. *Baltimore & Ohio Railroad Company*, 16 How. 314, 328; *Covington Drawbridge Co.* v. *Shepherd*, 20 How. 227, 232; *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286, 296; *Muller* v. *Dows*, 94 U. S. 444; *Steamship Co.* v. *Tugman*, 106 U. S. 118, 121; *Memphis & Charleston Railroad* v. *Alabama*, 107 U. S. 581, 585.

In *Insurance Co.* v. *Francis*, it was held that the act of March 2, 1867, c. 196, (14 Stat. 558; Rev. Stat. § 639, cl. 3,)

authorizing the removal into the courts of the United States of suits " between a citizen of the State in which the suit is brought and a citizen of another State," did not warrant the removal of an action brought in a court of the State of Mississippi, in which the plaintiff, a citizen of Illinois, alleged that the defendant was a corporation created by the laws of New York, located and doing business in Mississippi under its laws; and Mr. Justice Davis, in delivering judgment, said: "This, in legal effect, is an averment that the defendant was a citizen of New York, because a corporation can have no legal existence outside of the sovereignty by which it was created. Its place of residence is there, and can be nowhere else. Unlike a natural person, it cannot change its domicil at will, and, although it may be permitted to transact business where its charter does not operate, it cannot, on that account, acquire a residence there." 11 Wall. 210, 216.

In *Ex parte Schollenberger*, 96 U. S. 369, 377, Chief Justice Waite said: "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its charter, or excluded by local laws." The jurisdiction of the Circuit Court in that case, as well as in *New England Ins. Co.* v. *Woodworth*, 111 U. S. 138, 146, was maintained upon the ground that the defendant corporation, though incorporated in another State, yet, by reason of doing business in the State in which the suit was brought, and having appointed an agent there as required by its laws, upon whom process against the company might be served, was found in that State, within the meaning of the act of March 3, 1875, c. 137, § 1, then in force, and hereinbefore cited.

The statute now in question, as already observed, has repealed the permission to sue a defendant in a district in which he is found, and has peremptorily enacted that "where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." In a case between natural persons, as has been

seen, this clause does not allow the suit to be brought in a State of which neither is a citizen. If Congress, in framing this clause, did not have corporations in mind, there is no reason for giving the clause a looser and broader construction as to artificial persons who were not contemplated, than as to natural persons who were. If, as it is more reasonable to suppose, Congress did have corporations in mind, it must be presumed also to have had in mind the law, as long and uniformly declared by this court, that, within the meaning of the previous acts of Congress giving jurisdiction of suits between citizens of different States, a corporation could not be considered a citizen or a resident of a State in which it had not been incorporated.

The Quincy Mining Company, a corporation of Michigan, having appeared specially for the purpose of taking the objection that it could not be sued in the Southern District of New York, by a citizen of another State, there can be no question of waiver, such as has been recognized where a defendant has appeared generally in a suit between citizens of different States, brought in the wrong district. *Gracie* v. *Palmer*, 8 Wheat. 699; *St. Louis & San Francisco Railway* v. *McBride*, 141 U. S. 127, 131, and cases cited.

This case does not present the question what may be the rule in suits against an alien or a foreign corporation, which may be governed by different considerations. Nor does it affect cases in admiralty, for those have been adjudged not to be within the scope of the statute. *In re Louisville Underwriters*, 134 U. S. 488.

All that is now decided is that, under the existing act of Congress a corporation, incorporated in one State only, cannot be compelled to answer, in a Circuit Court of the United States held in another State in which it has a usual place of business, to a civil suit, at law or in equity, brought by a citizen of a different State.

*Writ of mandamus denied.*

MR. JUSTICE HARLAN dissented.