## BARBOUR v. THE PAIGE HOTEL COMPANY.

ATTACHMENT; AFFIDAVITS; PRACTICE; FOREIGN CORPORATIONS.

1. The affidavits in an attachment proceeding, by virtue of the statute relating to such proceedings, become a part of the record on appeal, as much as the pleadings, without a bill of exceptions or agreed statement.

2. In the determination of cases pending in the General Term of the Supreme Court of the District, at the time of the abolition of its appellate jurisdiction, and transferred to this court by operation of law, this court conforms as far as possible to the rules of practice then prevailing in the General Term.

3. A corporation organized under the laws of a foreign jurisdiction, although exclusively engaged in business in this District, having been organized for that purpose only, and having its secretary and treasurer here, is a non-resident and subject to attachment as such.

No. 157.   Submitted December 7, 1893.—Decided January 2, 1894.

HEARING on an appeal by the plaintiff from an order of the Supreme Court of the District of Columbia, holding a law term, sustaining a motion to quash a writ of attachment. *Reversed.*

The FACTS are sufficiently stated in the opinion.

*Messrs. Shepperd & Lavender* and *Mr. Andrew A. Lipscomb* for the appellants:

1. There is a conflict of authorities as to what constitutes a non-resident under the several attachment laws of this country, but the trouble has been principally owing to the divergence of views as to the difference between domicile, citizenship and residence; but this question cannot arise in this case, because "the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation can only be in the State by which it was created, although it may do business in other States whose laws permit it." *Shaw* v. *Quincy Mining Company*, 145 U. S., 44.   Or, as the Supreme Court says in other cases: A cor-

poration is a citizen of the State which created it.  *St. Louis v. Wiggins Ferry Co.*, 11 Wall., 423 ;  *Chicago N. W. R. Co. v. Whitton*, 13 Wall., 270 ;  *Muller v. Dows*, 94 U. S., 444. A corporation can have no legal existence out of the bounds of the sovereignty by which it is created.  It exists only in contemplation of law and by force of law, and where that law ceases to operate the corporation can have no existence. *Bank of Augusta v. Earle*, 13 Pet., 519 ;  *Ohio, etc., R. R. Co. v. Wheeler*, 1 Black, 286.  A corporation, although it may be permitted to transact business where its charter does not operate, cannot, on that account, acquire a residence there. *Germania Fire Ins. Co. v. Francis*, 11 Wall., 210 ;  *Baltimore & Ohio R. R. Co. v. Koontz*, 104 U. S., 5.

2. But it is said that the object, and the only object of the act is to compel the appearance of the defendant in the suit, and hence if service can be obtained, the attachment becomes unnecessary and a hardship, and that even when an attachment is resorted to, yet the attachment is at once dissolved so soon as the defendant enters his appearance.  That this idea is erroneous, see *Chase v. Manhardt*, 1 Bland Ch. 344; *Barr v. Perry*, 3 Gill, 315 ;  Drake on Attachment, Sec. 15 and 80, and cases cited ;  *R. R. Co. v. People's Savings Institution*, 64 Ga., 18 ;  *Cowardin v. Ins. Co.*, 32 Gratt., 447.

*Mr. W. A. Day* and *Mr. G. P. Montague* for the appellee :

1. The writ of attachment is, properly speaking, an ancillary writ, its primary and original object being to compel the appearance of a debtor, who is beyond the jurisdiction of the court, by attaching or taking possession of his property, which, in case of his failure to appear, is applied to the payment of the debt.  The purpose of the writ is to supply a remedy where none before existed.  The logical test of its applicability, therefore, is whether or not the debtor is amenable to the ordinary process of law; for, if he is, the reason for a resort to the extraordinary process of attachment is wanting.  Waples on Attachment, Ch. 2, sec. 2, p. 39 ;  *In re Thompson*, 1 Wend., 43 ;  *City Bank v. Merritt*, 1 Green

(N. J.), 134; *Risewick* v. *Davis*, 19 Md., 91; *Baldwin* v. *Flagg*, 43 N. J. L., 495; *R. R. Co.* v. *McDonald*, 5 Ga., 531; *Bushel* v. *Ins. Co.*, 15 S. & Rawle, 172.

2. If a debtor has a place of usual abode in the State at which ordinary process may be served, his property is not attachable as that of a non-resident. Waples on Attachment, Ch. 2, sec. 2, p. 37, 38; Am. & Eng. Ency., p. 896 and notes; Drake on Attachment, Sec. 58; *Dorsey* v. *Kyle*, 30 Md., 512; *Haggart* v. *Morgan*, 5 N. Y., 422.

3. The rule regarding residence is equally applicable to a corporation as to a natural person. *McQueen* v. *Mfg. Co.*, 16 Johns., 7; *R. R. Co.* v. *Harris*, 79 U. S., 65; *Ex parte Schollenberger*, 96 U. S. 369; *Day* v. *India Rubber Co.*, 1 Blatch., 628; *St. Clair* v. *Cox*, 106 U. S., 350; *R. R. Co.* v. *McDonald*, 5 Ga., 531; *Bank* v. *Rwy. Co.*, 3 Dutcher (N. J.), 206; *Baldwin* v. *Flagg*, 43 N. J. L., 495.

Mr. Justice SHEPARD delivered the opinion of the Court:

This case is here on appeal from a judgment quashing a writ of attachment sued out by appellant, in the Supreme Court of the District, against the appellee, which is a corporation organized under the laws of New Jersey, for the purpose of doing business in the District.

1. The record shows that the court in special term heard the motion to quash upon the affidavits of plaintiffs and the traversing affidavits of defendant. The point is made by appellee, for the first time, on the argument, that these affidavits are not part of the record proper at common law, and that the objection to the action of the court could be saved for review on appeal only by a bill of exceptions setting out the affidavits. It is certainly true that in cases at common law, where there has been a trial of an issue of fact, the evidence, whether written or oral, does not become a part of the record unless made so by bill of exceptions or agreed statement. But this case is exceptional in several respects. Under the provisions of Sec. 783, R. S. D. C., an attachment for matters of fact not apparent in the record itself, can

only be questioned by filing an affidavit traversing plaintiff's affidavit. The issue thus made is tried by the judge in chambers. As far as the affidavits are concerned, they necessarily become a part of the record as much as the pleading and process, by virtue of the statutory requirements.

The usual practice in the Supreme Court of the District has been for the justices presiding in special term to hear these motions upon the affidavits only. This seems to be the interpretation which the statute regulating the trial has generally received, though we have recently intimated, in *Robinson* v. *Morrison, ante* p. 105, that, upon the demand of either party, the witnesses ought to be introduced and examined orally.

It seems, also, that the uniform practice has been, upon appeal, to take the case before the General Term upon the original record without a bill of exceptions or agreement. No transcript of the record was ever made. This practice grew out of the peculiar construction of the District Supreme Court, which, whether sitting in special or General Term, and exercising original or appellate jurisdiction, was nevertheless one and the same court.

This case was tried by the special term and appealed to the General Term before this court was created, and has been transferred here by operation of law. In all such cases, we have from the beginning felt it our duty to conform, as far as possible, to the rules of practice prevailing in the General Term, in order that no injustice may be done.

Moreover, there is no conflict between the affidavits in point of fact, and the question to be decided is wholly one of law. The affidavit of defendant was not denied by plaintiffs, and it is not to be presumed that defendant could have proved, or would have been permitted to prove, more than is alleged therein.

Taking the affidavit to be true in all of its recitals, the question is fairly made whether defendant is a non-resident of the District of Columbia within the meaning of its

attachment laws. And we think it our duty to consider it as presented properly for our decision.

2. It appears from the defendant's affidavit that the Paige Hotel Company is a private corporation organized under the laws of New Jersey for the express purpose of operating the Hotel Cochran, in the District of Columbia; that continuously since November 1, 1891, it has conducted no business elsewhere than in the said District, except to hold such corporate meetings in Jersey City, N. J., as it was required to do by the law under which it was organized; and that at the time the attachment was sued out and long prior thereto, the secretary and treasurer of the corporation, S. E. Higgins, was constantly at its office in the said District, engaged solely in transacting its business, where he was accessible to all comers during the ordinary hours of business, and where he was found by the marshal and served with process in this suit.

The only provision of the statute law of the District relating to foreign corporations engaged in business therein is that which authorizes the service of process on their agents, or the persons conducting their business, or by leaving it at their place of business, in case the agent cannot be found, and making such service effectual to bring the corporation before the court. Sec. 790, R. S. D. C.

Upon principle and authority, we must hold that the defendant, notwithstanding its exclusive engagement in business in the District, its organization for that purpose only, and the continuous presence of its secretary and treasurer therein, is a non-resident and subject to attachment as such.

We have said in *Robinson* v. *Morrison, ante,* p. 105, that a natural person may have his domicile in one jurisdiction and his residence in another. These he may change throughout the States of our Union without let or hindrance. But this is not so with a corporation. As was well said in *Merrick* v. *Van Santvoord,* 34 N. Y., 218, " A corporation is an artificial being, and has no dwelling either in its office, its warehouses, its depots or its ships. Its domicile

is the legal jurisdiction of its origin, irrespective of its officers or the place where its business is transacted." See, also, *Blackstone Mfg. Co.* v. *Blackstone*, 13 Gray, 488.

The often quoted remarks of Chief Justice Taney, in *Bank of Augusta* v. *Earle*, 13 Pet., 588, are as sound to-day as when uttered: "A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty." After quoting the foregoing with one additional sentence, in a recent case in the same court, Mr. Justice Gray, speaking for the court, said: "This statement has often been reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the *habitat*, the residence, the citizenship of the corporation, can only be in the State by which it was created, although it may do business in other States whose laws permit it." *Shaw* v. *Quincy Mining Co.*, 145 U. S., 450.

The authority of this and other cases in the Supreme Court is questioned by the appellee, on the ground that they arise under statutes conferring jurisdiction upon the Federal courts, and that necessarily it is the residence, or *habitat*, of the corporation with respect to its citizenship or its status as a litigant in those courts, which is discussed and determined. It is very true that the words citizen, resident and inhabitant may have very different meanings according to the character or apparent object of the statutes in which they may be used; as, for instance, in those which regulate suffrage, taxation, attachment, exemptions, and the like.

This objection, while applicable to some of the cases, is not well taken to the case last cited. In that case a citizen of Massachusetts filed a petition for a mandamus to compel the judges of the Circuit Court for the southern district of New York to take jurisdiction of a suit begun by him

therein against the Quincy Manufacturing Co. The corporation was organized in Michigan under a law which authorized the opening of offices for carrying on business, and for holding corporate meetings, etc., in other States. The articles of incorporation provided for the maintenance of the principal office in New York, and the same was carried into effect. By the terms of the act of 1789, no civil suit could be brought in the circuit courts of the United States against one in any other district than that "whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." This was substantially re-enacted in the act of 1875. Now, it was always recognized that being found in a district did not make one a citizen of the State in which the district might be. One found in the district, whether a natural or an artificial person, had also to be a citizen of a different State from the plaintiff in order to give the jurisdiction. A corporation might be a citizen of one State, in the sense of the statute, and thus be suable in the Federal courts by the citizen of a different State, and if engaged in business in another State than that of its legal domicile, with an office and an agent there upon whom service could be properly had, it could be said, for the purpose of jurisdiction to be "found" there, as in *Ex parte Schollenberger*, 96 U. S., 369.

But the act of 1887 amended this again, leaving out the clause, "or in which he shall be found," and adding the following: "But where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

Regarding this, the court said it could not be doubted that the phrase, "district of the residence of" a person, is equivalent to "district whereof he is an inhabitant." It was held that the petition must be denied because the defendant, though found in New York, was neither a citizen nor a resident of that State. In our opinion this case is conclusive of the question, though it does not pass directly upon the

effect which the statutes of the State where a corporation is found, giving it the right to do business and maintain an office therein, and the like, might have upon the question of residence. No allusion is made in the opinion to any statute of New York, and the only one mentioned in the report of the case is that of Michigan, under which the organization was had, and which of course could have no effect in New York. In the later case of *S. P. Co.* v. *Denton,* 146 U. S., 202, there was a statute of the State which had been complied with by the corporation, providing the conditions upon which foreign corporations might establish offices and do business therein, but which was found to be unconstitutional. However, the court proceeded to say, that if the statute were valid, it would not have the effect to make the corporation a citizen of the State; and it might have added, or a resident thereof, with equal propriety.

Because of the importance of the question to the business interests of the District, and the ability and evident earnestness with which the view we have adopted was combated on the argument, we will continue its discussion further, though at the risk of prolixity.

In a well considered case in Rhode Island, there was an application made for the appointment of a receiver of a corporation which had been organized in New York for the express purpose of carrying on a part of its business in Rhode Island. Two of the three stockholders, one being president and the other secretary, lived in Rhode Island, where the factory and much the largest part of the property was situated. The corporation entered its appearance and submitted itself to the jurisdiction. The sole question was whether, under the statute regulating the proceeding, the corporation was a resident of the State. The court held it was not, saying in the course of the opinion, " We do not think a foreign corporation can, under any circumstances, be regarded as a resident of this State, in the absence of any legislation recognizing it, or giving it *status* as such. The proper seat or residence of a corporation is the State which

created it, and which continues it in existence; otherwise the corporation might have its residence in a multitude of jurisdictions." *Stafford* v. *American Mills Co.*, 13 R. I., 310.

There are instances where a corporation has been created by, or incorporated in, two or more States, or where a corporation of one State has been granted a franchise as such by the legislature of another, in which it has been held to be a resident, and sometimes a citizen, of the latter as well as of all. *O. & M. R. R. Co.* v. *Wheeler*, 1 Black., 286; *Rwy. Co.* v. *Whitton*, 13 Wall., 270; *R. R. Co.* v. *Harris*, 12 Wall., 65; *Clark* v. *Barnard*, 108 U. S., 436. But nothing less than such express re-incorporation, or unqualified recognition, would, in our opinion, work that result.

Legislative recognition of the right of a foreign corporation to do business within a State by making service upon its agents, when so engaged, effectual as service upon the corporation itself, is very far short of converting it into a domestic corporation or a "resident" of the State. The status conferred by such acts is that of a license to do business. The corporate franchise is beyond the power of the State to forfeit or to extend, and it can exercise no power of visitation or control whatever over the corporation as such.

In Virginia, under a statute substantially like ours with respect to foreign corporations doing business therein, &c., it was held, in a remarkably well considered case, that a foreign insurance corporation, engaged in business therein, was a non-resident within the meaning of the attachment laws. *Cowardin* v. *Universal Ins. Co.*, 32 Grattan, 445. The same doctrine was announced by the Supreme Court of Georgia, in a case where the corporation (a railway company) was authorized to operate its line in that State by act of the legislature, which also made it subject to actions at law in its courts. *S. C. R. R. Co.* v. *People's Savings Institution*, 64 Ga., 18.

In Colorado, there is a statute authorizing foreign corporations to establish offices in that State, and to be sued

there through service on their agents.  A foreign corporation complied fully with all the requirements of the law, and established and maintained its principal office at Denver in that State.  While so engaged it made a chattel mortgage, which was executed in accordance with law, and then in due form acknowledged before a justice of the peace in the district where its office was situated.  The statute regulating such instruments provided that any mortgagor of personal property should acknowledge the instrument before a justice of the peace "in the district in which he may reside."  In an attack upon the instrument, it was held that the corporation did not reside in Colorado.  *Cook* v. *Hager*, 3 Col., 386.

*The judgment quashing the writ of attachment must be reversed, with costs to the appellants, and the cause remanded for further proceeding not inconsistent with this opinion, and it is so ordered.*

---

A motion for a rehearing was made by the appellee, in denying which, on March 20, 1894, the court, by Mr. Justice SHEPARD, said:

1. In the light of the able and earnest argument in support of the motion for rehearing, we have given the main question in this case a careful re-examination, but can see no sufficient reason for changing the conclusion heretofore announced.  We are still thoroughly convinced of the soundness of the principles upon which that conclusion rests.  Whilst the language quoted from the opinions in the two English cases (newly cited on behalf of the motion), considered abstractly, sustains the contention, the decisions themselves stand upon another and better foundation, not at all inconsistent with our conclusion.  *Newby* v. *Colt's Patent Firearms Co.*, L. R. 7 Q. B., 293, came before the court upon a motion to quash the service had in an action at law upon the managing resident agent of the defendant, which, though a corporation of the State of Massachusetts,

had a branch office in the city of London, where, in the course of its business, the contract sued upon was made. *Haggin* v. *Comptoir. D'Escompte de Paris*, L. R. 23 Q. B. Div., 519, was also an appeal from an order refusing to set aside the service of summons upon the resident manager of defendant, which was a French banking corporation, having a permanent house in London where it transacted an extensive business through the manager aforesaid. Service was sustained in each case, the courts holding that the corporations were amenable to suit as residents of England, through service upon their general agents in pursuance of the rules of court made by authority of the Common Law Procedure Act.

As we have said in the former opinion, the signification of the words "resident" and "residence" depends largely upon the subject matter with respect to which they may be used. In the foregoing cases, they can have no other meaning than that these two foreign corporations, doing business in England by her permission, were to be considered residents thereof, for the purpose of giving jurisdiction to her courts, in the sense that they were *found* there just as, under the same circumstances, suits could formerly have been maintained under the acts of 1789 and 1875 in the Federal courts. *Railroad Co.* v. *Harris*, 12 Wall., 65 ; *Ex parte Schollenberger*, 96 U. S., 369. Having been permitted to do business in England, and having the right presumably to maintain suits in her courts, they were rightly held amenable to suits by British subjects, with whom they had entered into contracts, and to whom they had done injury in contemplation of law. The Supreme Court of the United States has lately maintained this doctrine in a suit brought in the Circuit Court for New York by a citizen of that State against an alien corporation, having an office therein and a financial agent residing there. *In re Hohorst*, 150 U. S., 653. That case was distinguished from *Shaw* v. *Quincy Mining Co.*, 145 U. S., 444, in which the defendant was a corporation of the State of Michigan, maintain-

ing its office in New York. The clause under which it was decided was held inapplicable to a suit brought by a citizen of one of the United States against an alien, and one of the leading reasons therefor was that, "To construe the provision as applicable to all suits between a citizen and an alien would leave the courts of the United States open to aliens against citizens, and close them to citizens against aliens."

In this connection, it may be remembered, too, that while the jurisdiction of the Federal courts is limited both as to subject matter and parties, that of the common law courts of England, like our State courts, is general. Had there been a statute in England similar to ours relating to the attachment of non-residents, those same courts, without inconsistency, could, and probably would, have held that the defendant corporations, though residents for the purpose of being sued, were, at the same time, non-residents in the sense of the attachment law.

If this reasoning be not sound, then an alien or foreign corporation (foreign used in the sense of another State) would here and elsewhere enjoy a privilege or immunity denied to natural persons. A natural person or citizen can be a resident of but one place at the same time, though he may carry on business with established houses managed by his agents in every State of the Union; hence he might be liable to attachment as a non-resident at all times in each State save the one of his actual physical residence. On the other hand, under the doctrine contended for by appellees here, a corporation created by one State might become a resident of each of the other States at the same time and thereby become exempt from liability to attachment. If there were no other reason, we would refuse recognition to a rule which would create this arbitrary and unjust discrimination.

2. The criticism of the direct applicability of the *decision* in *Shaw* v. *Quincy Mining Co.*, 145 U. S., 444, is in great measure well founded; for it is true ( as we admitted in the

former opinion with respect to the decisions of the Federal courts generally), the court had to deal with the question of the residence of the corporation as it arose in the clause of the act vesting jurisdiction, as regards persons, in the Federal courts. Yet the questions are intimately connected and the reasoning is on the same line; and it is evident, from the language of the court in that case, that in its opinion a corporation can only be a resident, in any general sense, of the State of its creation. This is all the more apparent also in *Central Trust Co.* v. *McGeorge*, 151 U. S., 129, where it was held that this right of a foreign corporation to object to the jurisdiction when sued in the Federal court in another State, where it might be engaged in business, by the citizen of a third State, was a privilege only that might be waived if not claimed at the proper time.

Since this decision was rendered, the Supreme Court has passed directly upon the question of the residence of a corporation as distinguished from its domicile or citizenship. *G. H. & S. A. Rwy. Co.* v. *Gonzales*, 151 U. S., 496. In that case, Gonzales, who was an alien, sued the defendant in the Circuit Court of the Western District of Texas and served process upon defendant's agent at El Paso, under the Texas statute giving general jurisdiction of suits against railway companies to the courts of any county through or into which their railroads extend, and also against corporations generally in any county in which they may have an agent or representative. Texas is divided into three Federal judicial districts. Under its act of incorporation in Texas, the defendant's principal office, where its corporate business was transacted, was in the city of Houston, in the eastern district; but the bulk of its line of railway was within the limits of the western district. It was held, reversing the court below, that the defendant could not be considered a resident of the district where sued. Under the doctrine contended for by appellee here, that decision could not have been rendered. This is the necessary inference from the decision itself, and appears plainly in the

opinion of the court as delivered by Mr. Justice Brown, from which we quote the following extract: "These cases" (of *Quincy Mining Co., Denton,* and *Hohorst*) "must be regarded as establishing the doctrine that a domestic corporation is both a citizen and an inhabitant of the State in which it is incorporated. . . . In the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its corporate business is transacted, even though it may transact its most important business in another place. It is but a corollary of the proposition laid down in the three cases above referred to, that if the corporation be created by the laws of a State in which there are two judicial districts, it should be considered an inhabitant of that district in which its general offices are situated, and in which its general business, as distinguished from its local business, is done." Again he says: "Irrespective of any statute, such as that of Texas above referred to, the rulings of the State courts generally favor the position that a corporation can only be considered as resident in the jurisdiction in which its principal offices are located, though it may run a railway and have local agents in other jurisdictions."

It follows that *the motion must be overruled, with costs; and it is so ordered.*