GALE v. SOUTHERN BUILDING & LOAN ASS'N OF ALABAMA.

(Circuit Court, W. D. Virginia. September 1, 1902.)

1. FEDERAL COURTS—JURISDICTION—CITIZENSHIP—PLEADING.
    A bill, by alleging that complainant is a resident of or lives at a certain place, does not state his citizenship, necessary to give the federal court jurisdiction.

2. SAME—SERVICE ON NONRESIDENT CORPORATION.
    Under Act Cong. March 3, 1875 (18 Stat. 470), amended by Act Cong. March 3, 1887 (24 Stat. 552), restricting the districts in which a personal transitory action may be brought to that in which defendant resides or that in which plaintiff resides, and in the latter only when defendant can there be found for service of process, suit may be maintained against a foreign corporation in the district of plaintiff's residence, where there has been service of process on the corporation's agent, appointed under Code Va. 1887, § 1104, requiring a foreign corporation doing business in the state to appoint a resident of the state on whom process may be served.

3. FRAUD IN PROCURING CONTRACT.
    Statement of an agent of a building and loan association to complainant that his stock would mature in six years, whereby his loan would be paid, will not be held a fraudulent representation avoiding the contract, but an expression of opinion, or an unauthorized statement, complainant having a prospectus of the association, stating that shares are estimated to mature in about six years, and that no agent has power to change any of the conditions or terms expressed therein.

4. SAME—LACHES.
    An unexplained delay of four years after knowledge of the falsity of statements is fatal to relief in equity for fraud in procuring a contract.

5. CONTRACT—BY WHAT LAWS GOVERNED.
    A contract by which a stockholder in a building and loan association borrows money of it is one of Alabama, the association being created under its laws, and having its chief office there, and it being provided that remittances shall be sent to it at H., in Alabama, by check, payable

¶ 1. Averments of citizenship to show jurisdiction of federal courts, see note to Shipp v. Williams, 10 C. C. A. 261.
    See Courts, vol. 13, Cent. Dig. § 878.

¶ 2. Service of process on foreign corporations, see note to Eldred v. Palace Car Co., 45 C. C. A. 3.

there, though monthly payments may be made to local treasurers, the association not being liable therefor till the money is received at the home office.

**6. USURY—AVOIDING LAW.**
Provisions in a contract by which a stockholder borrows money of a building and loan association, intended to make the contract one of Alabama, will not be held to have been intended to avoid the usury laws of Virginia, both parties expecting, when the contract was made, that the maturity of the stock, whereby the loan would be paid, would be in such a time that the interest paid would be less than six per cent. per annum, the rate allowed by the Virginia laws.

**7. SAME—BUILDING AND LOAN ASSOCIATION—PLEADING.**
As construed by supreme court of Alabama (Code Ala. 1886, § 1556, subsecs. 9, 10), providing a building and loan association may loan to a shareholder on such terms as may be prescribed by the by-laws, and when advisable, or when several desire to borrow, it may loan to the highest bidder, allows such an association to lend on a fixed premium, which, together with the interest, exceeds the interest rate which others may charge; and a bill to avoid a contract of loan on the ground of usury because of a fixed premium must allege that the premium feature is contrary to the association's by-laws, and it is not enough to allege that the contract is forbidden by the statute.

Scott & Staples, for complainant.
J. H. Wright, for defendant

McDOWELL, District Judge. The questions here come up on demurrer to a bill in equity. The complainant is a borrowing stockholder in the defendant association, who avers that for various reasons his debt to the defendant should be declared satisfied, and the deed of trust given on his land (located in this district) should be canceled; or, failing this, that his contract be held as usurious, and that a settlement be decreed accordingly. The defendants are the Southern Building & Loan Association, a corporation created by the laws of Alabama, having its chief office there, and the two trustees in the deed of trust given to secure the loan. These trustees are averred to be "residents" of Alabama. So far as appears, no attempt has been made to mature the bill as to them.

The first ground of demurrer is that the complainant is not alleged to be a citizen of Virginia. The bill reads: "Your orator is, and for the past fifteen years has been, a resident of the city of Roanoke, county of Roanoke, and state of Virginia." Elsewhere in the bill Roanoke is spoken of as the place where complainant "lived." Roanoke is in the Western district of Virginia. In 18 Enc. Pl. & Prac. 307, it is said: "An averment of the residence of the parties is not the equivalent of an averment of citizenship for the purpose of giving jurisdiction to the federal courts." Again, in 22 Enc. Pl. & Prac. 265, it is said: "An averment of residence in a particular state is not an averment of citizenship therein." In Denny v. Pironi, 141 U. S. 123, 11 Sup. Ct. 967, 35 L. Ed. 657, it is said: "That an averment of residence is not the equivalent of an averment of citizenship, and is insufficient to give the circuit court jurisdiction, has been settled in a multitude of cases

¶ 6. What law governs usury by building and loan associations, see note to Kirlicks v. Association, 51 C. C. A. 319.

in this court." In Shaw v. Mining Co., 145 U. S. 447, 12 Sup. Ct. 936, 36 L. Ed. 768, it is said: "It was held by this court from the beginning that an averment that a party resided within the state or the district in which the suit was brought was not sufficient to support the jurisdiction, because in the common use of words a resident might not be a citizen." In F. G. Oxley Stave Co. v. Butler Co., 166 U. S. 655, 17 Sup. Ct. 711, 41 L. Ed. 1149, it is said: "The averment that a party resides in a particular state does not import that he is a citizen of that state." The averment that the complainant "lives" in the state is also not a sufficient allegation of citizenship. One may live, even for many years, in one state, and at the same time retain his citizenship in another. I am constrained to hold that this ground of demurrer is well taken.

The next ground of objection is that this court has no jurisdiction of the nonresident corporation defendant. The act of March 3, 1875 (18 Stat. 470), as amended by the act of March 3, 1887 (24 Stat. 552),—the act of 1888 making no change in this respect,—restricts the districts in which personal transitory actions may be brought to that in which the defendant resides or that in which the plaintiff resides. But there is jurisdiction in the latter only in the event that the defendant can be there found for the service of process. 1 Fost. Fed. Prac. (3d Ed.) 77; Pitkin Co. v. Markell (C. C.) 33 Fed. 387; Dinzy v. Railroad Co. (C. C.) 61 Fed. 52. The Code of Virginia of 1887 (section 1104) requires every company incorporated under the laws of another state and doing business in this state to appoint some person residing in this state its agent, by written power of attorney, upon whom process may be served. The power is to be recorded. The return on the process in this case reads: "Executed at Roanoke by serving a copy on John H. Wright, attorney for the association." On the proposition that suit may be maintained in the district of the plaintiff's residence against a nonresident corporation, when there has been service of process in that district on one declared by the state law to be the proper agent of the corporation, I am in no doubt. The case of Machine Co. v. Walthers, 134 U. S. 43, 10 Sup. Ct. 485, 33 L. Ed. 833, is conclusive. In Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942, the suit was brought in the Western district of Texas by a resident of the Eastern district against a Kentucky corporation doing business and having an agent in the Western district. It was held that the court was without jurisdiction, but that the defendant was suable in Kentucky or in the Eastern district of Texas. The case of Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768, was one in which the plaintiff did not reside in the Southern district of New York, where the suit was brought, and the only claim of jurisdiction was that the Michigan corporation defendant had its usual place of business there, and service of process was there made on its secretary. In re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402, is to the same effect. The case of Dinzy v. Railroad Co. (C. C.) 61 Fed. 49, is exactly in point here. There a citizen of the Northern district of Iowa brought suit in the federal circuit court of that district against the Illinois Central Railroad Company, an Illinois corporation, hav-

ing its chief office in Illinois. Service of process was made, under the Iowa statute, on one of the local ticket agents of the company, a part of whose road was in the Northern district of Iowa. It was held that the circuit court had jurisdiction,—citing, on the point that service on a nonresident corporation may be according to the state statute, Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853; Railroad Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354; Railway Co. v. Whitton, 13 Wall. 270, 20 L. Ed. 571; Railroad Co. v. Estill, 147 U. S. 591, 13 Sup. Ct. 444, 37 L. Ed. 292. See, also, Rawley v. Railroad Co. (C. C.) 33 Fed. 305. It follows that it is unnecessary to consider the question of jurisdiction under the eighth section of the act of 1875 (18 Stat. 472).

### Fraud in Procurement of Contract.

The proposition that the contract here is fraudulent, because of the alleged representations of some unnamed agent of the association that the stock would mature in six years, is not, in my opinion, sound. The prospectus of the association, which the complainant had at the time, reads: "All shares are estimated to mature in about six years from their date, and at maturity the member may withdraw such share, and receive $50.00 [the par value] therefor." And later: "No representative, agent, or officer of the association has power to waive or alter any of the conditions or terms expressed in the printed literature of the association." The complainant should, I think, be held to have known that a statement as to when the earnings of the association would mature the stock was intended as an expression of opinion. Such a statement cannot be a fraudulent misrepresentation. And, if the agent undertook to contract that the stock should mature in six years, he was going beyond his authority. And this was, or should have been, known to the complainant. Moreover, it was known to complainant at least as early as October, 1895 (even if the letter of April 18, 1894, should not have apprised him of his error), that the association did not consider that its stockholders had a right to treat the stock as matured by 72 monthly payments. This suit was not instituted until September, 1899. Such delay, not sufficiently excused, is fatal to relief in equity for fraud in the procurement of the contract.

### Usury.

The contract here was, I think, made with reference to the laws of Alabama. The association was created by Alabama laws, had its chief office there, and the bonds given by borrowing stockholders were expressly made payable there. While monthly payments could be made to local treasurers, the association was not to be liable for such payments until the money had been received at the home office. And in another place in the prospectus, under the heading "How to Remit," it is provided that remittances shall be sent to the association at Huntsville, Ala., by check, etc., payable in Huntsville to the order of the association. We need not, therefore, consider the question of usury with reference to the law of Virginia, unless it be because of the averment in the bill to the effect that the provisions in

the contract intended to make it one solvable under the laws of Alabama were inserted for the purpose of evading the usury laws of Virginia. It does not seem to me that the doctrine here invoked is applicable to the facts in this case. Both parties supposed at the time the contract was made that the stock would mature in about six years, and that the loan would thereby be paid. If this supposition had been well founded, the complainant would have paid less than 6 per cent. per annum for the use of the money. It is, therefore, not predicable of such a transaction that the parties intended to evade the usury laws of Virginia, which allow 6 per cent. interest.

There remains to be considered the charge that the transaction here is usurious under the laws of Alabama. This court takes judicial notice of the public statutes of the other states (Owings v. Hull, 9 Pet. 625, 9 L. Ed. 246; Lamar v. Micou, 114 U. S. 223, 5 Sup. Ct. 857, 29 L. Ed. 94; Gormley v. Bunyan, 138 U. S. 635, 11 Sup. Ct. 453, 34 L. Ed. 1086; Andruss v. Association, 36 C. C. A. 336, 94 Fed. 580), and of the judicial decisions of the courts of the different states (Pennington v. Gibson, 16 How. 81, 14 L. Ed. 847; Cheever v. Wilson, 9 Wall. 123, 19 L. Ed. 604). The statute of Alabama provides:

"Subsec. 9. When funds are on hand, to lend the same to any shareholder of the corporation, on such security, and on such terms and conditions as may be prescribed by the by-laws; but the security shall be a mortgage on real estate sufficient to protect the association.

"10. When deemed advisable, or when two or more shareholders desire to borrow funds on hand, the association may lend such funds to the highest bidder; and all shareholders shall have equal opportunities to bid under such regulations as may be prescribed by the by-laws; but no shareholder shall borrow or purchase the loan of more than two hundred dollars for each share held by him."

Code Ala. 1886, § 1556.

This statute has been construed by the supreme court of Alabama to give to building and loan associations the right, if their by-laws so provide, to lend on a fixed premium, which, together with the interest charge eo nomine, exceeds the interest rate allowed to be charged by other lenders. Sheldon v. Association (Ala.) 25 South. 820; Johnson v. Association (Ala.) 26 South. 201; Association v. Rector, 38 C. C. A. 686, 98 Fed. 171; Association v. Ballard (Ala.) 27 South. 971. It is also held by that court that a bill which fails to allege that the premium feature is contrary to the by-laws of the association is fatally defective. Association v. Ballard, supra; Beyer v. Association (Ala.) 31 South. 113. The bill in the case at bar alleges that the contract is forbidden by the statute above quoted, but does not allege that the by-laws do not allow the premium charge. In the supplemental brief of counsel for complainant it is said:

"Since we received the supplemental brief of counsel for the defendant, we have secured advance sheets of the Southern Reporter, and read several cases bearing thereon. We are reluctantly forced to the conclusion that the case of Beyer v. Association, decided by the supreme court of Alabama last December, and reported in 31 South. 113, holds that, in order to maintain the allegation of usury, the bill must also allege that the loan was not made in accordance with the by-laws. * * * Should this court hold that the contract is governed by the laws of the state of Alabama, we recognize that it will follow that decision, regardless of its consequences."

Having reached the conclusion that the contract here is governed by the law of Alabama, it follows that the demurrer is, on this point, well taken. An order may be submitted dismissing the bill, and awarding the defendant its costs.