PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AXEL JOHNSON, INCORPORATED,
Plaintiff-Appellant,

v.

CARROLL CAROLINA OIL COMPANY,
INCORPORATED; LINDA A. CARROLL;

No. 97-1629

CHARLES S. LANIER, Trustee,
Defendants-Appellees,

and

PACE OIL COMPANY, INCORPORATED,
Defendant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, Senior District Judge.
(CA-96-130-7-BR)

Argued: March 2, 1998

Decided: June 4, 1998

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Wilkins and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Kenneth Berlin, Sr., SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, L.L.P., Washington, D.C., for Appellant. Mat-

thew Patrick McGuire, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellees Carroll and Carroll Oil; Michael Perkins Flanagan, WARD & SMITH, P.A., Greenville, North Carolina, for Appellee Lanier. **ON BRIEF:** Don J. Frost, Jr., SKADDEN, ARPS, SLATE, MEAGHER & FLOM, L.L.P., Washington, D.C.; Kenneth A. Shanklin, SHANKLIN & MCDANIEL, L.L.P., Wilmington, North Carolina, for Appellant. Craig A. Bromby, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellees Carroll and Carroll Oil.

_____

**OPINION**

LUTTIG, Circuit Judge:

This case arises on appeal from the district court's dismissal of four counts of a six-count complaint for want of subject matter jurisdiction. For the reasons stated herein, we affirm.

I.

Defendant-appellee Carroll Carolina Oil Co., Inc. ("CCO") owns a Superfund site, certain cleanup costs of which plaintiff-appellant Axel Johnson, Inc. ("Axel") -- the former operator, either directly or through its predecessors in interest, of petroleum refinery and storage facilities at the site -- has agreed to pay pursuant to a consent decree with the EPA. CCO received the property pursuant to a quitclaim deed from defendant-appellee Linda Carroll, who at the relevant times owned and operated CCO. Carroll had acquired the property through a foreclosure sale conducted by defendant-appellee Charles Lanier, the property's trustee.

Subsequent to entry of the consent decree, Axel brought a six-count complaint against CCO, Carroll, and Lanier. The first two counts ("the Superfund counts") of Axel's suit sought to hold Carroll and CCO jointly and severally liable with Axel, under federal and state law, for its Superfund cleanup costs. The four remaining counts ("the state-law counts") sought damages and rescission based on allegations that Carroll and Lanier had fraudulently manipulated the foreclosure sale through which Carroll obtained the Superfund property.

2

The defendants-appellees moved to dismiss one of the two Super-fund counts and the four state-law counts pursuant to FRCP 12(b)(1) and FRCP 12(b)(6). The district court denied the motion as to the Superfund count, but dismissed the state-law counts under FRCP 12(b)(1) on the grounds that Axel lacked standing to bring such claims under North Carolina law. To expedite appeal of this decision, Axel requested that the district court certify its decision as a final judgment with respect to the state-law counts under FRCP 54(b). The district court complied, and Axel noticed its appeal. Accordingly, neither Superfund count is before this court at this time.

II.

We hold that the district court lacked jurisdiction to consider Axel's four state-law claims. In that court, Axel invoked three bases for subject-matter jurisdiction: (1) 42 U.S.C.§ 9613(b) (exclusive jurisdiction over Superfund litigation), (2) 28 U.S.C. § 1331 (federal question jurisdiction), and (3) "principles of pendent jurisdiction." J.A. at 42 (amended complaint); accord id. at 2 (initial complaint) (same). It is undisputed -- and, of course, indisputable -- that neither 42 U.S.C. § 9613(b) nor 28 U.S.C. § 1331 extends federal jurisdiction to state-law claims. Thus, jurisdiction can be sustained here only under "principles of pendant jurisdiction."

These principles have been codified in 28 U.S.C.§ 1367, which provides that,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental juris-diction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Id. § 1367(a). As is relevant here, the test for determining whether state and federal claims form part of the same constitutional case or controversy is set forth in United Mine Workers of America v. Gibbs:

> Pendent jurisdiction, in the sense of judicial power, exists whenever there is [a federal claim], and the relationship

3

between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

383 U.S. 715, 725 (1966) (citations and footnotes omitted; second and third emphases added). Accord ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 628 (4th Cir. 1997).

Although neither party, nor the district court, noted this jurisdictional defect, Axel's submissions to the district court, as well as certain express findings made by that court at Axel's request, clearly establish that Axel's four state-law counts were not within the district court's supplemental jurisdiction. In particular, in requesting that the district court certify as final its order dismissing those counts, Axel argued that (1) the Superfund counts and state-law counts were factually distinct, J.A. at 91-93, (2) the Superfund counts and state-law counts were legally distinct, id. at 93-94, and (3) because "the factual and legal bases underlying [the Superfund and state-law counts] are separate and distinct," id. at 98, "certification is warranted because . . . the possibility of duplicative appellate review is remote," id. See also id. at 93 n.1 ("Further, because there is minimal factual overlap between the two claims, there is little concern that the Fourth Circuit would have to relearn the same set of facts upon appeal after adjudication of all claims." (citation and internal quotation omitted)). Similarly, in certifying its order under FRCP 54(b), the district court explicitly found that "the Superfund Claims that have not been dismissed . . . are factually and legally distinct from the State Claims." J.A. at 104. It follows from these arguments and findings that the state-law counts and Superfund counts neither "derive from a common nucleus of operative fact," nor are so closely related that Axel "would ordinarily be expected to try them all in one judicial proceeding," and thus that supplemental jurisdiction could not be exercised

4

over the state-law counts. <u>Cf</u>. <u>Hales</u> v. <u>Winn-Dixie Stores, Inc.</u>, 500 F.2d 836, 848 (4th Cir. 1974) (noting failure of pendant jurisdiction over state-law count that was "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other [federal] count").

III.

When, at oral argument, this court questioned Axel's counsel about the apparent lack of supplemental jurisdiction, counsel tentatively suggested that jurisdiction over the state-law counts could, perhaps, be sustained under 28 U.S.C. § 1332 (diversity jurisdiction), a statutory basis for jurisdiction that Axel had previously invoked neither in the district court nor before this court. An examination of the pleadings and record, however, revealed to counsel and this court that Axel had not only failed to plead diversity jurisdiction, but that it had also failed to plead facts from which the existence of such jurisdiction could properly be inferred. Although the pleadings set forth the residence of each of the natural persons who are parties to the litigation, they did not positively establish the citizenship of those persons. <u>See</u>, e.g., J.A. at 43 (amended complaint) (stating residence, but not citizenship or domicile of Carroll and Lanier); <u>id</u> . at 3-4 (initial complaint) (same). Nor was counsel able to refer the court to anything else in the record that clearly established the citizenship of those persons.

As the Supreme Court has consistently held, however, state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, <u>see</u> , e.g., <u>Newman-Green, Inc.</u> v. <u>Alfonzo-Larrain</u>, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States <u>and</u> be domiciled within the State."), and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone. <u>See</u>, e.g., <u>Realty Holding Co.</u> v. <u>Donaldson</u>, 268 U.S. 398, 399 (1925) ("The bill alleges that . . . appellee [is] a`resident' of Michigan. This is not a sufficient allegation of appellee's Michigan citizenship."); <u>Shaw</u> v. <u>Quincy Mining Co.</u>, 145 U.S. 444, 447 (1892) ("It was held by this court from the beginning that an averment that a party resided within the State or the district in which the suit was brought was not suffi-

5

cient to support the [diversity] jurisdiction, because in the common use of words a resident might not be a citizen, and therefore it was not stated expressly and beyond ambiguity that he was a citizen of the State . . . . The same rule has been maintained to the present day . . . ."); Robertson v. Cease, 97 U.S. 646, 648 (1878) ("Looking, then, at the pleadings, and to such portions of the transcript as properly constitute the record, we find nothing beyond the naked averment of Cease's residence in Illinois, which, according to the uniform course of decisions in this court, is insufficient to show his citizenship in that State. Citizenship and residence, as often declared by this court, are not synonymous terms."); Brown v. Keene, 33 U.S. (8 Pet.) 112, 115 (1834) (Marshall, C.J.) (holding allegation that defendant was "a citizen or resident" of Louisiana insufficient to support diversity jurisdiction); Bingham v. Cabot, 3 U.S. (3 Dall.) 382 (1798) ("str[iking] off the docket" many cases that alleged residence rather than citizenship); cf. Hodgson v. Bowerbank, 9 U.S. (5 Cranch) 303 (1809) (holding allegation of residence, as opposed to citizenship, insufficient to support alienage jurisdiction); Mossman v. Higginson, 4 U.S. (4 Dall.) 12 (1800) (same).

When confronted with the distinction between residence and domicile, upon which distinction the above-cited cases largely rest, counsel immediately acknowledged that he understood the difference between these legal terms of art, see, e.g., Commissioner of Internal Revenue v. Nubar, 185 F.2d 584, 587 (4th Cir. 1950) ("When these words, `domicile' and `residence', are technically used by persons skilled in legal semantics, their meanings are quite different."); that the complaint alleged neither citizenship nor domicile, but only residence, and thus did not properly invoke the court's diversity jurisdiction; and that the complaint had, in fact, never been intended to invoke such jurisdiction, but had been drafted instead with deliberate intent to invoke only the supplemental jurisdiction of the court.

Thus, at the conclusion of oral argument, it was apparent to the court that Axel had abandoned its tentative attempt to invoke the diversity jurisdiction, and had chosen to rest, instead, solely on its invocation of the supplemental jurisdiction. Axel's abandonment of this attempt was confirmed when, after argument, counsel for Axel submitted to the court a letter addressing "the jurisdictional issue that the Court of Appeals raised," which rested entirely on a discussion of

6

the supplemental jurisdiction without even mentioning the diversity jurisdiction.

CONCLUSION

Because the district court lacked supplemental jurisdiction over Axel's state-law counts, and because Axel has failed to establish any other basis of federal jurisdiction over these counts, we hold that Axel's state-law counts were properly dismissed for lack of subject matter jurisdiction.*

AFFIRMED

_____

*Because Axel has apparently abandoned its short-lived attempt to invoke the diversity jurisdiction, and because, in light of Axel's explicit arguments below, it is plain that its invocation of the supplemental jurisdiction cannot be cured by amendment, we conclude that the district court did not err in dismissing Axel's complaint with prejudice.

7