## Case No. 6,434.

HERVEY et al. v. ILLINOIS MIDLAND RY. CO.

[7 Biss. 103;[1] 8 Chi. Leg. News, 274.]

Circuit Court, S. D. Illinois. March 11, 1876.

REMOVAL OF CAUSE FROM STATE COURT—FOREIGN CITIZENSHIP—NOMINAL PARTIES.

1. A part of a controversy only cannot be removed, but the case must be so removed that it can be wholly determined.

2. Foreign citizens, where they do not constitute the entire plaintiff or defendant, cannot remove a suit, as the suits contemplated by the act of March 3, 1875 [18 Stat. 470], are those between citizens of one of the states of the Union on one side, and foreign states, citizens or subjects on the other.

3. Where parties are merely nominal and have no actual interest then their citizenship will not affect the question of removal.

In equity.

Bishop & McKinlay, for plaintiffs.
Robert G. Ingersoll, for defendants.

Before DRUMMOND, Circuit Judge, and TREAT, District Judge.

DRUMMOND, Circuit Judge. An original bill was filed in the Edgar county circuit court, on the 11th of September, 1875, by one

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Henry Hervey, who claimed to be owner of the majority of the stock of various railroad companies, the Paris & Decatur Railway Company, the Peoria, Atlanta & Decatur Railway Company, and the Paris & Terre Haute Railway Company, all of which had been merged in the Illinois Midland Railway Company, and which was made a defendant. The only plaintiffs in the original bill were Hervey, and some judgment creditors of the Peoria & Decatur Railway Company.

The original bill alleged that there were very large claims in judgment and otherwise against these various companies, and that executions had been issued; and that owing to the purchase by the Peoria, Atlanta & Decatur Railway Company, of the other roads, it could not be ascertained how the judgments could be collected or appropriated, and therefore asked for the appointment of a receiver.

The claims outstanding—what are called the floating debts of the company—were said to be something over three hundred thousand dollars. A receiver was appointed. An amended bill was then filed which set out in more detail the various facts stated in the original bill and also included numerous plaintiffs besides those in the original bill.

These various parties were stockholders of the road, and also judgment and other creditors, and it was stated in the amended bill that if the property was placed in the hands of a receiver, and thus a foreclosure prevented by the sale under execution of the property, the company might be placed upon a stable footing, and that something might be realized for the stockholders and the creditors.

The receiver took possession; various applications were made by him to the court; money was paid under the direction of the court, and contracts also entered into with approbation of the court, by which the receiver became liable to pay certain moneys from time to time, and to issue certificates, (a very objectionable thing which, however, the courts have to some extent countenanced of late, while the property is in possession of the receiver; but it is only to be permitted, I think, under extraordinary circumstances) so that the Edgar circuit court had retained possession of this property for a very considerable time. The only defendant to the original and amended bill, was the Illinois Midland Railway Company.

This was substantially the condition when in February, two creditors, Albert and Morris Grant, citizens of Great Britain, and representing themselves to be bondholders of all these various companies merged into the Illinois Midland Railway Company, came into court and asked to be made parties defendant, and also for leave to file a cross-bill. At the same time Secor, representing himself to be trustee of the mortgage executed by the Peoria, Atlanta & Decatur Railway Company, asked to be made a party. An order was accordingly made by the court. The order

seems to have anticipated the actual application, the order being on the 7th of February, and the application not being in fact made in the clerk's office until about the 15th of February. This, perhaps, is not material. They were made parties, on leave given by the court. They then filed answers to the original and amended bills, in which Secor set up that he was mortgagee and trustee of the Peoria, Atlanta & Decatur road; that he represented thirteen hundred thousand dollars for which the mortgage was given; that the plaintiffs were seeking to make the property, which he states was covered by the mortgage, available to them to pay the claims which they had against these companies, and alleging an independent fact, that the Midland Railway Company, and all these companies, were insolvent; that they had not property enough to pay the various mortgage debts against them; and that the bonds secured by the mortgage were a prior lien over the claims represented by the various claimants in the original and amended bills.

These were also the substantial allegations of Albert and Morris Grant, with the exception that they represented in their answer that they were bondholders of these three companies. They allege also that there was a mortgage made by the Paris & Decatur road, of which they held bonds, and also by the Paris & Terre Haute road, of which they were the owners of the bonds, but who the mortgagees and trustees were they do not say. All that is stated is that there were mortgages or deeds of trust to secure bonds of which they were the holders.

Now this was the status of the case when, on the 16th of February these defendants, Albert and Morris Grant and Secor, filed a petition in the clerk's office of the circuit court of Edgar county, to have the cause removed to this court, for the reason that there was a controversy which could be wholly determined as between the trustee and these bondholders and the plaintiffs in the original and amended bills; and if that were so there would be no objection in one aspect of the case for the court to take jurisdiction, because the language of the law is, that when the controversy is wholly between citizens of different states, the court may have jurisdiction, although perhaps the implication is, there may be other controversies in the case between other parties.

It can hardly be said that is true in this case. For instance, in the original and amended bills, there is no allusion whatever to any of the bonds issued—to any paramount claim over that of the stockholders and the judgment and other creditors. But it is insisted that the property, if put in the hands of a receiver, and taken care of, and an arrangement made by which the floating debt can be paid off, can become valuable to the stockholders; and there is nothing in the original or the amended bill to indicate that the Midland Railway Company, which is a citizen of this state, has no interest in the property. And it is manifest that the case cannot be transferred without affecting the interest of the Midland Railway Company very seriously, and the only ground upon which it could be transferred by these bondholders and this trustee is that the Midland Railway Company is a mere nominal party.

If it is a real party, it being one of the defendants as well as the bondholders and the trustee, it is a controversy between that company as one of the defendants and the judgment and other creditors, the plaintiffs in the original and amended bills, and therefore it cannot be wholly determined as between these parties who seek for a removal.

But, independent of that, it appears that Albert and Morris Grant are citizens of Great Britain. They are not citizens of one of the states of this Union, as we think they must be within the meaning of the last clause of the second section of the act of the 3d of March, 1875, under which this case is sought to be removed.

"Between citizens of a state and foreign states, citizens or subjects" (18 Stat. 470), is one of the conditions under which the federal court has jurisdiction. Now "citizens of a state" there means citizens of one of the United States, and the suits contemplated are suits between citizens of one of the states of the Union on one side and foreign states or citizens or subjects on the other.

Then the next section proceeds to say (18 Stat. 471), "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states," (that means different states of this Union—not citizens of one of the states of this Union and foreign states, citizens or subjects: and the suits referred to are the suits which can be fully determined as between them,) "then either one or more of the plaintiffs or defendants actually interested in such controversy may remove such suit."

Now, as I have said, we cannot determine the controversy, whatever it may be, between these parties seeking a removal, and the plaintiffs in the original and amended bills, without affecting the controversy which may exist between the Midland Railway Company and them, and therefore it is not wholly a controversy between the parties seeking such removal and the plaintiffs in the original and amended bills. Why there was this distinction made—why the language was dropped in the last clause of the section which is contained in another part—it is not for us to determine. It is sufficient that the phraseology is changed, and seems to be limited when less than the whole of the plaintiffs or defendants have the right to remove the suit so that they must be citizens of different states of the Union, and the controversy must be wholly between them.

In this case it is not so. There is a controversy between citizens of the same state, namely, some of the plaintiffs, citizens of

Illinois, and the Midland Railway Company, also a citizen of Illinois.

Again, it is stated in the application for removal, that some of the plaintiffs are foreigners. Waring & Company are bondholders, and are citizens of Great Britain and Ireland, and another party is a citizen of Canada. These are included among the plaintiffs in the amended bill.

Of course they are to be affected by the settlement of any controversy between the other plaintiffs and these defendants who seek a removal. For instance, if it is to be held that the trustee of the bondholders seeking the removal is to have a prior claim over the judgment creditors, then a foreigner is to be affected by that adjudication of the court, whatever it may be. So, in relation to the bondholders who are foreigners and plaintiffs, with the others.

It is not therefore in this aspect of the case a controversy wholly between citizens of different states, but it is a controversy between the citizens of a foreign country and citizens of one or more of the United States.

It has occurred to us as a question whether or not these difficulties may be removed, as in this very complicated case it has been suggested that it might perhaps be better for the interest of all parties that this court should take jurisdiction of the case. But of course we can only take it where the law enables us to do so. It is said that the Midland Railway Company, which is the only other defendant, has no interest in this controversy. If it be true, if it is actually insolvent, and all these various railroad companies of which it is the successor are also insolvent, and there is not more than enough, or not enough, to pay the bonded debt, then it may be that and the other companies are merely nominal parties. They may have no real interest in the controversy. So perhaps it might be if the stockholders were parties and the stock was of no value whatever.

The controversy then would be, whether the bondholders should have this property, or the judgment and other creditors represented in the original and amended bills. But we cannot assume now, in the present aspect of the case, as it appears upon the record, that this is so. It is alleged on one side, it is true, but it is in an answer which has not, as yet, judicially come to the knowledge of the court, and this allegation is entirely different from that in the bill.

We think that it must affirmatively appear that the court has jurisdiction. These answers were filed in vacation. The state court has never had its attention drawn to them—they never have come under its judicial cognizance in any way. It is to be observed that the Midland Railway Company has never answered, and the Paris & Decatur Railroad, the Paris & Terre Haute Railroad, the Peoria, Atlanta & Decatur Companies have never appeared directly in the case, nor have their trustees or mortgagees, except Mr. Secor.

The Midland Railway Company may admit it, or it may appear to the satisfaction of the court that it has only a nominal interest, and so of the other parties named. It may be remarked further there was no necessity for these bondholders, Albert and Morris Grant, to be made parties. The trustees could act for them, as there seems to be no antagonism or breach of duty on their part, especially under the allegation contained in Secor's answer, that he is requested by them to appear for the protection of the bondholders. He is so far actually interested, within the meaning of the last clause of the second section of the act of 1875, as to enable him to represent them, although he is a mere trustee, yet as trustee representing their interests, he can become a party to the suit.

So then, if it did appear, or shall be made to appear that these various railroad companies are only nominally interested, and are nominal parties to this controversy, if the trustees shall come in and desire to appear as defendants, for the purpose of directing and controlling the litigation, and if it shall prove that there is no other real controversy in the case; except between them as representing the bondholders and the judgment and other creditors of these various companies, and that they are citizens of different states—then we think that the court may take jurisdiction.

[Mr. Ingersoll—This case then remains as it is, as I understand it, as though no motion had been made. I will try to make it appear to this court by proper evidence on giving the other parties notice.

[The Court—We understand that the circuit court of Edgar county sits on Monday. I think you had better appear before that court and make your regular application, and then if what is proposed is true a proper case may be made.

[Mr. Ingersoll—It seemed sufficient to say in the answer and petition, that the road is utterly insolvent, and that there is not property enough to pay the bonds—and to make it appear that they are merely nominal parties.

[The Court—That may not be true.

[Mr. Ingersoll—I say I supposed that would be sufficient.

[The Court—I think the proper allegation would be to allege, that they were, from these circumstances, mere nominal parties. It does not seem that we had better make any order in the case.

[R. N. Bishop—It will be proper, then, for the circuit court of Edgar county to take notice and proceed with the case.

[Treat, District Judge—The case is not here.

[Mr. Bishop—I will state. I have been perfectly willing to adopt the suggestion of the

court, as to the removal of the cause here at the proper time, as soon as I have consulted my client, to strike out everybody that stands in the way.] [2]

[NOTE. Subsequently, April 6, 1878, the Union Trust Company filed a petition in the state court for the removal of the cause to the federal court, with the usual allegations to give jurisdiction. An order was accordingly made, a bond filed, and the federal court took jurisdiction without objection. At the expiration of 18 months the complainant made a motion to remand the case to the state court, upon the ground of irregularity in the bond, and for certain other reasons. The motion was denied. 3 Fed. 707. The causes were then referred to a special commissioner to take testimony and report his conclusions of law and fact. Exceptions were filed to this report, and, after argument by counsel, certain orders were made by the court. 28 Fed. 169.]