ROBERTS v. PACIFIC & A. RY. & NAVIGATION CO. et al.

(Circuit Court of Appeals, Ninth Circuit.    February 2, 1903.)

No. 840.

1. REMOVAL OF CAUSES—SUIT AGAINST CITIZEN AND ALIEN.
    In a suit by a plaintiff, who is a citizen of the state where it is brought, against two defendants, the fact that one is a citizen of a different state, and the other an alien, does not deprive a federal court of jurisdiction, nor prevent a removal from a state court under the judiciary act of 1887–88 (Act March 3, 1887, 24 Stat. 552, as amended by Act Aug. 13, 1888, 25 Stat. 433 [U. S. Comp. St. 1901, p. 507]), where either defendant might have removed the suit if sued alone, and they join in the petition for removal.

2. SAME—PETITION—ALLEGATION OF CITIZENSHIP.
    An allegation in a petition for removal that one of the petitioners is a corporation organized under the laws of a foreign country is a sufficient allegation that it was a citizen of such country when the action was commenced against it.

3. CONTRACT—ACTION FOR BREACH—CONSTRUCTION OF WRITINGS.
    Where the correspondence between the parties introduced in evidence clearly constituted a contract for service to be performed by plaintiff for a specified compensation, it was the duty of the court to so determine; and it was error to submit such issue to the jury, and to admit for their consideration thereon, in connection with the correspondence, a subsequent agreement with respect to the same services made after a breach of the prior contract by defendants, as shown by their own testimony.

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

¶ 2. Averments of citizenship to show jurisdiction in federal courts, see note to Shipp v. Williams, 10 C. C. A. 261.

121 F.—50

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

The plaintiff in error, a citizen and resident of the state of Washington, brought an action against the defendants in error, one of which is a corporation of the state of West Virginia, and the other a corporation of British Columbia, to recover damages for breach of a contract alleged to have been made and entered into on December 16, 1898, by the terms of which the plaintiff in error had agreed to haul freight from the summit of White Pass to Lake Bennett, Alaska. The action was commenced in the superior court of the state of Washington for King county, and was thence removed to the Circuit Court. A motion was made to remand on the ground that the case was not removable. The motion was denied. 104 Fed. 577. Thereafter the cause was tried before a jury, and a judgment was rendered upon their verdict in favor of the defendants in error. The defendants in error had denied in their answer that they had entered into a contract with the plaintiff in error. Concerning that issue the following correspondence which passed between the plaintiff in error and the manager of the defendants in error, which was all the correspondence between the parties, was offered and admitted in evidence:

"Seattle, Wash., Dec. 14, 1898.

"Pacific & Arctic Railway and Navigation Co., British Columbia-Yukon Railway Co., Dexter Horton Bldg., Seattle, Wash.—Gentlemen: In keeping with my conversation of yesterday with your general traffic manager, Mr. L. H. Gray, in reference to freighting goods for you from the White Pass, or summit of the mountain, to Lake Bennett in the Northwest Territory, I wish to say that if you will guarantee to furnish me at least one hundred tons per month commencing Jan. 15, 1899, and extending to about April 15, 1899, or until the roads break up in the spring, and pay me therefor at the rate of four and one-half cents per pound on delivery of goods at Lake Bennett, and haul my feed and supplies from Skagway to the summit of the mountains for one and one-half cents per pound, and give me a free pass over your road during the time of said work, I will agree to put on sufficient teams to handle, with expedition, the amount above stated or more, when we find that there will be more to haul, you, of course, giving me sufficient notice to procure the extra teams, and will endeavor to work to your interest in the handling of said freight and protect you from any combination that might be formed for the purpose of advancing rates; any piece of machinery or other freight, weighing more than five hundred pounds, to be paid for extra, as may be agreed upon hereafter. An early reply will greatly oblige,
"Yours truly,                                    G. W. Roberts,
"Room 622, New York Block, Seattle."

"Seattle, Wash., December 16th, 1898.

"Mr. G. W. Roberts, Room No. 622, N. Y. Bldg., City—Dear Sir: Referring to your favor of December 14th, 1898, my file No. 74, will say that we expect to haul from Skaguay to the summit of White Pass about 4,000 tons of freight, between January 15th and April 15th. We accept your ·rate of 4½ cents per pound from Summit of White Pass (International Boundary) to Lake Bennett, but we cannot agree to give you any special amount in a specified time, as the elements are beyond our control, and there is a possibility of the steamers being delayed in reaching Skaguay. We do agree, however, to treat you fairly by dividing the freight with you and other parties in proportion to their carrying capacity. You can depend upon the White Pass & Yukon Route acting fairly and squarely with you; and, it is my opinion that you will be offered at least 25 or 30 tons of freight per day. We will agree to allow your sleds and harness repaired and horses shod at our blacksmith shops along the trail, at actual cost.
"I consider the above a fair proposition and await your acceptance.
"Yours truly,                                    L. H. Gray,
"L. H. G.-M.                                     G. T. M."

"Seattle, Wash., Dec. 17th, 1898.

"White Pass & Yukon Route, L. H. Gray, G. T. M., Seattle, Wash.—Dear Sir: Referring to your favor of Dec. 16th in reference to carrying your freight from the summit of White Pass to Lake Bennett, I have considered your proposal to give me a rate of 4½ cts. per lb. and hereby accept the same.

"Very truly yours,                                           G. W. Roberts."

It was proven, also, over the objection of the plaintiff in error that on February 15, 1899, the plaintiff in error signed, at the instance of the defendants in error, the following paper, known as "Defendants' Exhibit No. 2":

"Skaguay, Alaska, February 15th, 1899.

"Mr. L. H. Gray, G. T. M., W. P. & Y. R., Seattle, Washington—Dear Sir: We, the undersigned, hereby agree to protect the following freighters' rates during good sledding:

Between Heney and Summit............................. 1c. per pound
Between Summit and Log Cabin......................... 1c. per pound
Between Summit and Lake Bennett...................... 2c. per pound
Between Log Cabin and Lake Bennett................... 1c. per pound

"If absolutely necessary to protect Dyea competition and Packers' rates from Skaguay, we will confer with you and arrange some satisfactory basis of rates.

"Yours truly,                                           G. W. Roberts."

Ballinger, Ronald & Battle and J. D. Jones, for plaintiff in error. John P. Hartman, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that the court denied the motion to remand the cause to the state court. It is argued that since the plaintiff in error was a citizen of the state of Washington, and one of the defendants in error was a citizen of West Virginia, and the other an alien, no cause was made for removal under the removal act of 1887 (24 Stat. 552 [U. S. Comp. St. 1901, p. 507]), and under the doctrine as stated in Black's Dillon on Removal of Causes, §§ 68, 84, in the latter of which sections it is said:

"But a different question is presented when a plaintiff, citizen of the state where the suit is brought, sues two defendants, one of whom is a citizen of another state, and the other an alien. Here there is no community of citizenship between any of the parties. Yet the cause is not removable, because it does not come within any of the provisions of the statutes. It is casus omissus. It cannot be said to be a controversy between citizens of different states, because one of the parties is not a citizen; and it cannot be described as a controversy between citizens of a state and foreign citizens or subjects, because one of the defendants is not a foreigner."

According to this doctrine, an action brought by a citizen of a state against a citizen of another state and an alien is not removable, although, if two actions had been brought by the same plaintiff—the one against the alien and the other against the citizen—both would have been removable. The act of March 3, 1887, as corrected by the act of August 13, 1888, § 2, 25 Stat. 434 [U. S. Comp. St. 1901, p. 509], provides for removing to the Circuit Court of the United States "cases that might have been originally commenced therein." The first section defines the original jurisdiction of the Circuit Courts,

and declares that they shall have jurisdiction of cases involving the prescribed jurisdictional amount, "in which there shall be a controversy between citizens of different states  *  *  *  or a controversy between citizens of a state and foreign states, citizens and subjects." It is true that the present case does not present a controversy which is wholly between citizens of different states, nor does it present one which is wholly between a citizen and subjects of a foreign state; but can it be said, in view of the fair intendment of the statute, that it is not a case in which there is a controversy between citizens of different states, or a controversy between a citizen of a state and a foreign subject? Considering the purpose of the act and the general scope of its provisions, we think its language should be construed as comprehending the present case. There is here presented a controversy between the plaintiff in error and each of the defendants in error. It is true that the latter are sued jointly, but notwithstanding that fact a controversy exists as to each. The act does not declare that the controversy shall be one wholly between citizens of different states. That fact is of important significance when it is observed that in the second section, providing for removal of causes, it is declared:

"And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district."

In the present case if there were a separate controversy which was wholly between the plaintiff in error and the corporation of West Virginia, the whole case would have been properly removable at the instance of that corporation alone. The language so used in the statute indicates that, in the contemplation of Congress, a controversy might exist between citizens of different states which was not wholly between such citizens, but which might involve an alien jointly sued or jointly suing, and that such a case would be embraced in the comprehensive provision in which the jurisdiction of the Circuit Court is defined in the first section of the act above quoted. It would be a construction entirely inharmonious with the general purpose of the act and its provisions to hold that a citizen is deprived of his right of recourse to the federal courts by reason of the fact that he is jointly sued with an alien, who, if sued alone by the same plaintiff, would have that right. But a single case is cited in Black's Dillon on Removal of Causes to sustain the text—the case of Hervey v. The Illinois Midland Railway Company, 7 Biss. 103, Fed. Cas. No. 6,434. In that case the ground of removal was that a separate controversy was presented, which was wholly between citizens of different states. The court found that the controversy was not separable, within the meaning of the act of March 3, 1875 (18 Stat. 473), providing for removal "when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states and which can be wholly determined as between them." Incidentally the court remarked:

"Now, 'citizens of a state,' there, means citizens of one of the United States; and the suits contemplated are suits between citizens of one of the states of the Union, on one side, and foreign states, or citizens or subjects, on the other."

This language which is relied upon as giving support to the doctrine which is contended for by the plaintiff in error was used with reference to a point not presented in the case then before the court, and the remark of the court has not the force of a precedent upon the question involved. Several cases were cited by the plaintiff in error as tending to sustain the point of law which he contends for, only two of which we find it necessary to advert to: Tracy v. Morel (C. C.) 88 Fed. 801, and King v. Cornell, 106 U. S. 395, 1 Sup. Ct. 312, 27 L. Ed. 60. In the first of these cases, Munger, District Judge, sustained a motion to remand on the ground that the petition did not show that the citizenship of one of the defendants, whose citizenship and residence were alleged to be unknown, was in fact diverse from the citizenship of each of the plaintiffs. After denying its jurisdiction upon that ground, the court proceeded to remark, "Nor can jurisdiction be sustained on the ground that it is a controversy between citizens of a state and foreign citizens or subjects," and quoted with approval the language of section 84 of Black's Dillon on Rem. Causes. The motion to remand in that case raised only the question whether the petition to remove was filed too late, and the remarks of the court so quoted were obiter. We are unable to find in the case of King v. Cornell any support for the contention of the plaintiff in error. All that was held in that case was that by the act of March 3, 1875, the second clause of section 639 of the Revised Statutes, giving the right to an alien to remove a cause which presented as to him a separable controversy, was repealed, and that thereafter, where a citizen of a state sued in the court thereof a citizen of the same state and an alien, the latter was not entitled to remove the suit to the Circuit Court. The decision, it is true, reaffirms the general doctrine which has always been recognized that the federal courts have jurisdiction only of cases which are expressly enumerated in the words of the constitution and laws. What we hold in the present case is that the cause is within the language of the statute, in that it presents a controversy between citizens of different states, as well as a controversy between a citizen of a state and a foreign citizen.

It is contended further that the cause was not properly removable, for the reason that the petition for removal alleges concerning the British Columbia Yukon Railway Company only the fact that it was at the time of the filing of the petition a corporation incorporated under the provincial legislature of the province of British Columbia. It is true that, in order to present a case for removal, it must be shown that the citizenship of the parties was at the beginning of the action, as well as at the time of filing the petition, such as to authorize the removal. But where it is alleged in the petition that one of the parties is a corporation incorporated under the laws of a particular state or country, it necessarily follows from that averment that it was so incorporated at the time when it became a party to the

action. A corporation is incorporated but once, and thereby it becomes a citizen of the country under whose laws it is organized. It does not change its residence or citizenship. It appears, however, from the complaint, which is a part of the record on the removal, that the British Columbia & Yukon Railway Company was incorporated at the time of the commencement of the action. In determining whether a case for removal is presented, reference may be had to the whole record. Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. 58, 27 L. Ed. 87; Shaw v. Quincy Mining Co., 145 U. S. 444, 453, 12 Sup. Ct. 935, 36 L. Ed. 768.

Error is assigned to the admission of certain evidence upon the trial. To sustain the allegation of the complaint that a contract had been entered into, the correspondence between the parties was admitted in evidence. The court submitted to the jury the question whether these writings, together with other evidence consisting of certain conversations which preceded them, constituted a contract. No error is assigned, however, to the submission of that question to the jury; and the question whether or not the writings prove that a contract was made and entered into would not now be before us, were it not for the fact that the court permitted the defendants in error to offer in evidence the subsequent writing known as "Defendants' Exhibit No. 2." L. H. Gray, who was the manager of both the defendants in error, testified on their behalf that he notified the plaintiff in error, after the latter arrived in Alaska with his teams, outfit, and horses, that the defendants in error could not give him any freight, on account of the high rates he wanted from the Summit to Lake Bennett, and notified him and other packers that it would be necessary to reduce the rates still lower, whereupon the plaintiff in error replied that he could not carry freight for almost nothing, and that he did not want freight at the reduced rates, which must be had to compete with the Dyea Trail, but that thereafter he signed said Exhibit No. 2, which was received and read in evidence; that later the witness notified the plaintiff in error that he must make a still lower cut in the freight rate from the Summit to Lake Bennett; and that the plaintiff in error stated that he did not want freight upon those rates. To this evidence and the exhibit the plaintiff in error objected on the ground that the defendants in error had not pleaded a rescission or modification of the contract. The court admitted the said testimony and exhibit in evidence, and instructed the jury that it was not admitted for the purpose of showing a rescission or modification of the contract, but as evidence to aid them in deciding whether or not a contract had been entered into. This is assigned as error. The correspondence between the parties shows that a contract was entered into. It is true that not all of its terms were definite, and not all of the proposals of the plaintiff in error were accepted, but there was a meeting of their minds upon some of them. By his first letter the plaintiff in error offers to haul freight from the Summit to Lake Bennett for the season commencing January 15, to April 15, 1899, or until the roads should break up in the spring, at the rate of 4½ cents per pound, and offers to guaranty to put on sufficient teams to haul 100 tons a month or more. The

reply of the defendants in error to this proposition accepts the rate of 4½ cents per pound from the Summit to Lake Bennett, but states that the defendants in error cannot agree to furnish any particular amount in a specified time, for the reason that the elements were beyond their control, and there was the possibility of delay of their steamers in reaching Skaguay. They added, "We do agree, however, to treat you fairly by dividing the freight between you and other parties in proportion to their carrying capacity," which, in their opinion, would give him "25 or 30 tons a day"; and they concluded with the words, "I consider the above a fair proposition and await your acceptance." The plaintiff in error answered by writing: "I have considered your proposition to give me a rate of 4½ cents per lb. and hereby accept the same." Now, it is true that this contract does not bind the defendants in error to furnish the plaintiff in error any specified amount of freight. It does, however, bind them to give to him a proportion of the freight pro rata with the other carriers according to carrying capacity, which they estimated at 25 or 30 tons a day. From this covenant it was possible to make certain the proportion of freight which they promised to furnish him. There was a breach of this contract, by the admission of the defendants in error. Their witness testified that the plaintiff in error went to Alaska with his teams, outfit, and horses, and that freight was refused him solely on the ground that competition with a rival company had made it necessary to reduce the rates which had been agreed upon. It was for the court to say whether the correspondence constituted a contract, and, under the pleadings, we think it was prejudicial error to permit the jury to take into consideration the defendants' Exhibit No. 2 as throwing light upon the question whether a contract had been entered into. That instrument purports to be a written agreement to accept a lower rate than 4½ cents per pound, and to be signed by the plaintiff in error some two months after the contract had been made.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with these views.